# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**KELLY A. KELLY**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 14 2013, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES ROBERSON,                )
                               )
    Appellant-Petitioner,      )
                               )
      vs.                   )    No. 18A02-1204-PC-306
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Respondent.       )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable John M. Feick, Judge
Cause No. 18C04-0901-PC-1

**February 14, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

James Roberson appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his conviction for murder. We reverse and remand.

**Issue**

The sole dispositive issue is whether Roberson received ineffective assistance of trial counsel.[1]

**Facts**

In the early morning hours of March 18, 2006, Roberson and Antron Young were at a nightclub in Muncie. Young repeatedly exchanged angry words with persons at the club, and he also repeatedly bumped and pushed Roberson. Young had a reputation for being a bully. The nightclub closed shortly before 3:00 a.m. As Roberson and Young left the club, they had to be prevented from fighting each other by a mutual friend, with the friend essentially forcing Roberson into his car to separate him from Young.

Many of the people who were at the club, including Roberson and Young, went to a nearby convenience store, with Young arriving there after Roberson. In the parking lot, Roberson argued with two friends about a handgun, and he eventually took possession of it. Roberson then said that he wanted to "merk a n***a," which is slang for wanting to kill someone, and that he would kill anyone who "messes" with his friends. Tr. pp. 261, 272.

---

[1] Roberson also contends that he received ineffective assistance of appellate counsel. Given our resolution of the trial counsel issue, we need not address that question.

Young then arrived at the convenience store with his cousin, Bruce Smith. Roberson saw Young and yelled to Smith, "I need to holler at your cousin." Id. at 139. Smith thought Roberson and his friends could have been intending to "jump" on Young. Id. at 141. Young got out of Smith's vehicle, lifted up his shirt to show that he was unarmed, and then went into the convenience store. Roberson stayed outside. Roberson's friend, Larry Brown, went into the store and attempted to fight Young, but other people broke it up.

After this fight, another cousin of Young's, Brian Young, left the store, shook Roberson's hand as he stood by the door, and said, "see you later." Id. at 368. Then Young next left the store, immediately punched Roberson in the face, and began walking away. Roberson drew the handgun and fired three shots at Young, with two of the shots striking Young in the head and chest. After Young fell to the ground, Roberson fired several more shots at him, saying, "die mother f***er, die." Id. at 236. Young died from the gunshot wounds.

The State charged Roberson with murder. At trial held on April 2-4, 2007, Roberson claimed self-defense, and the trial court instructed the jury accordingly. In addition, the trial court gave final instructions to the jury on voluntary manslaughter as a lesser included offense of murder. It does not appear that trial counsel expressly requested instructions on voluntary manslaughter, but neither did counsel object to any

3

such instructions being given.[2]  Ultimately, the jury convicted Roberson of murder. Roberson pursued a direct appeal, claiming that the prosecutor had committed misconduct during closing argument and that there was insufficient evidence to support his conviction.  We rejected both arguments and affirmed Roberson's conviction. Roberson v. State, No. 18A04-0705-CR-289 (Ind. Ct. App. Jan. 25, 2008), trans. denied.

Roberson subsequently filed a PCR petition, arguing he received ineffective assistance of trial and appellate counsel with respect to not objecting to the content of the trial court's instructions regarding voluntary manslaughter and not challenging them on direct appeal as fundamentally erroneous.  On March 22, 2012, the post-conviction court denied Roberson's petition.  He now appeals.

**Analysis**

PCR proceedings are civil in nature, and a defendant bears the burden of establishing his or her claims by a preponderance of the evidence.  Smith v. State, 822 N.E.2d 193, 198 (Ind. Ct. App. 2005), trans. denied.  A defendant appealing the denial of a PCR petition is challenging a negative judgment.  Id.  Thus, to the extent this appeal turns on factual issues, Roberson must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the PCR court. See id.  "In other words, the defendant must convince this court that there is no way within the law that the court below could have reached the decision it did."  Id.  We will

---

[2] At the PCR hearing, neither of Roberson's trial attorneys had any recollection of discussions related to the final jury instructions.

4

not defer to the PCR court's legal conclusions, but we do accept its factual findings unless they are "clearly erroneous." Id.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), cert. denied. An attorney's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006).

Roberson contends that the murder and voluntary manslaughter instructions were erroneous both because they effectively precluded the jury from considering whether Roberson committed voluntary manslaughter if the State proved the basic elements of murder, i.e. knowingly killing Young, and because they erroneously placed the burden on the State of proving the existence of sudden heat beyond a reasonable doubt. At the outset, we acknowledge that it does not appear trial counsel expressly requested that the jury be instructed on voluntary manslaughter as a lesser included offense of murder.

5

However, once the trial court indicated that it was going to give such instructions and counsel acquiesced in that decision, it was incumbent upon counsel to ensure that the instructions were correct.

Trial counsel's acquiescence in the giving of instructions regarding voluntary manslaughter also may have constituted a strategic decision to permit the jury to consider convicting Roberson of that offense rather than murder.[3] The post-conviction court ruled in part that it would have been inconsistent for Roberson to pursue a claim of self-defense and simultaneously obtain jury instructions allowing the jury to find that he was acting under sudden heat so as to support a conviction for voluntary manslaughter instead of murder. The law in Indiana is clear, however, that a defendant in a murder trial may claim both self-defense and, alternatively, seek a conviction for voluntary manslaughter instead of murder. See Clark v. State, 834 N.E.2d 153, 158 (Ind. Ct. App. 2005) (holding that "an instruction on self-defense does not preclude an instruction on voluntary manslaughter"). The post-conviction court's suggestion to the contrary was erroneous.

Although voluntary manslaughter is a lesser included offense of murder, it is not a "typical" lesser included offense, because instead of requiring the State to prove less than all the elements of murder, it requires the State to prove all of the elements of murder and disprove the existence of sudden heat when there is any appreciable evidence of such in

[3] Moreover, even if trial counsel had objected to the jury being instructed on voluntary manslaughter, the State may insist on the jury being so instructed when there is evidence of sudden heat in the record. See Collins v. State, 966 N.E.2d 96, 103-04 (Ind. Ct. App. 2012). There was such evidence in this case, as we discuss later. Again, regardless of whether trial counsel originally wanted the jury to be instructed on voluntary manslaughter, they had to insist that any such instructions be legally correct.

6

the record. See Watts v. State, 885 N.E.2d 1228, 1232 (Ind. 2008). Additionally, a conviction for voluntary manslaughter constitutes an acquittal of murder. Id. The absence of sudden heat is not an element of murder, and a jury ordinarily does not have to be instructed that the State has the burden of disproving the existence of sudden heat in order to gain a murder conviction. Massey v. State, 955 N.E.2d 247, 255 n.4 (Ind. Ct. App. 2011). If there is no evidence in the record of sudden heat, the jury need not be instructed that the State bears the burden of disproving the existence of sudden heat. Id. If, however, the record contains any appreciable evidence of sudden heat, an instruction on voluntary manslaughter is justified. Roark v. State, 573 N.E.2d 881, 882 (Ind. 1991). Additionally, such evidence may arise from either the State's or the defendant's evidence; the defendant does not bear the burden of placing the issue of sudden heat into question. Dearman v. State, 743 N.E.2d 757, 761 (Ind. 2001).

"'Sudden heat'" is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." Suprenant v. State, 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010), trans. denied. Words alone do not constitute sufficient provocation to warrant a jury instruction on voluntary manslaughter, especially when the words were not intended to provoke the defendant, such as fighting words. Id. Additionally, any alleged provocation must be such that it would obscure the reason of an "ordinary man," which is an objective as opposed to a subjective standard. Id. at 1282-83. Unlike the right to self-defense, which ceases to exist once a danger has

7

passed, "sudden heat can survive for a while beyond the act of provocation." Roark, 573 N.E.2d at 883.

We conclude the record here contains ample evidence of possible sudden heat. Throughout the evening leading up to the shooting, Young was being argumentative and belligerent toward Roberson, including repeatedly bumping into him at the nightclub. Also, although Roberson verbalized an intention to "merk a n***a" before shooting Young, we note that Roberson did not actually shoot Young until after Young had punched him in the face. Tr. p. 261. Thus, it is open to reasonable debate whether Roberson's prior comments were mere bragging and whether he would have pulled the trigger if Young had not punched him. The shooting also occurred immediately after Young's punch, meaning there was little or no time for calm reflection by Roberson between Young's ultimate act of provocation and the shooting. Young's provocation went beyond mere words to physical violence, although Young's words and other conduct throughout the evening may have contributed to the provocation.

This evidence of sudden heat meant that it was crucial that the jury be properly instructed on the State's burden of proof for murder and voluntary manslaughter. In this case, the trial court gave the following jury instruction, number 4, regarding the offense of murder:

> The crime of murder is defined by law as follows:
>
> A person who knowingly or intentionally kills another human being commits murder, a felony.

Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:

1.  The Defendant, James D. Roberson, III

2.  knowingly

3.  killed

4.  Antron Dushaun Young.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of murder, a felony, as charged in Count 1.

App. p. 166.

It also gave the following instruction, number 12, regarding voluntary manslaughter:

The Defendant is charged with Murder, a felony. The crimes of Voluntary Manslaughter, a Class A Felony, Voluntary Manslaughter, a Class B Felony, Involuntary Manslaughter, a Class C Felony, and Reckless Homicide, a Class C felony are offenses included in the crime of Murder. If the State proves the Defendant guilty of Murder, you <u>need</u> not consider the included crimes. However, if the State fails to prove the Defendant committed the crime of Murder as charged, you may consider whether the Defendant committed Voluntary Manslaughter, as a Class A Felony, Voluntary Manslaughter, as a Class B Felony, Involuntary Manslaughter, a Class C Felony, or Reckless Homicide, a Class C Felony.

You must not find the Defendant guilty of more than one crime.

Id. at 174 (emphasis added). However, in reading this instruction to the jury, the trial court said, "If the State proves the Defendant guilty of Murder, you <u>must</u> not consider the included crimes." Tr. p. 452 (emphasis added).

Finally, the trial court gave the following instruction, number 13, regarding voluntary manslaughter:

> If you find that the Defendant is not guilty of the crime of Murder as charged in the information, you may then consider whether the Defendant is guilty of the included offense of Voluntary Manslaughter, as a Class A Felony or as a Class B Felony.
>
> The crime of Voluntary Manslaughter is defined by law as follows:
>
> A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Class B Felony. However, the offense is a Class A Felony if it is committed by means of a deadly weapon.
>
> The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to Voluntary Manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.
>
> Before you may convict the Defendant of Voluntary Manslaughter, as a Class A Felony, the State must have proved each of the following elements beyond a reasonable doubt:
>
> 1. The Defendant, James Roberson, III
>
> 2. knowingly or intentionally
>
> 3. killed, by means of a deadly weapon

10

4.	Antron Dushaun Young

5.	while he was acting under sudden heat.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Voluntary Manslaughter, a Class A Felony.

If you find that the Defendant is not guilty of the included offense of Voluntary Manslaughter, a Class A felony, you may then consider whether the Defendant is guilty of the included offense of Voluntary Manslaughter, as a Class B Felony.

Before you may convict the Defendant of Voluntary Manslaughter, as a Class B Felony, the State must have proved each of the following elements beyond a reasonable doubt:

1.	The Defendant, James Roberson, III

2.	knowingly or intentionally

3.	killed

4.	Antron Dushaun Young

5.	while he was acting under sudden heat.

The difference between Voluntary Manslaughter, as a Class A Felony, and Voluntary Manslaughter, as a Class B Felony, is that the State has the additional burden of proving beyond a reasonable doubt that the killing was committed by means of a deadly weapon for a conviction as a Class A Felony.

App. pp. 175-76.

Turning first to instruction 13, there is no doubt that instruction contains erroneous, internally inconsistent, and inherently contradictory language. "It is well settled in Indiana that sudden heat is not an element of voluntary manslaughter." Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002). Rather, where there is evidence of sudden heat, the State bears the burden of disproving its existence beyond a reasonable doubt. Id. An instruction assigning to the State the burden of affirmatively proving sudden heat is erroneous as a matter of law. Id. Thus, to the extent instruction 13 twice stated that the State bore the burden of proving the existence of sudden heat beyond a reasonable doubt, it was legally erroneous. See id.

Boesch went on to hold that the instruction in that case, which as here had not been objected to, was not fundamentally erroneous.[4] The erroneous instruction in Boesch also informed the jury that sudden heat was "a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter" and that "in order to prove the offense of Murder . . . the State bears the burden in its evidence of negating the existence of sudden heat beyond a reasonable doubt." Id. at 1280. The Boesch court also noted that defense counsel had correctly emphasized to the jury during closing argument that the State bore the burden of disproving the existence of sudden heat. Id.

This court thoroughly examined Boesch's holding in Eichelberger v. State, 852 N.E.2d 631 (Ind. Ct. App. 2006), trans. denied. In Eichelberger, the jury was erroneously

---

[4] Boesch did not address whether the failure to object constituted ineffective assistance of counsel, because the defendant in that case had not alleged ineffective assistance of counsel in his PCR petition; the claim of fundamental error had been part of the defendant's direct appeal, which our supreme court decided simultaneously with the denial of the PCR petition.

12

instructed at the trial of a defendant charged with murder that to convict the defendant of voluntary manslaughter instead, the State bore the burden of proving the existence of sudden heat beyond a reasonable doubt. The instruction also stated, "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter." Eichelberger, 852 N.E.2d at 635. Nowhere was the jury instructed that to convict the defendant of murder, the State bore the burden of disproving the existence of sudden heat.

Despite some similarities to Boesch, this court held that the defendant received ineffective assistance of trial counsel for tendering the faulty voluntary manslaughter instruction. Id. at 639. In particular, we noted the Seventh Circuit's grant of habeas corpus relief in Sanders v. Cotton, 398 F.3d 572 (7th Cir. 2005). In Sanders, as with this case, Boesch, and Eichelberger, the jury was erroneously instructed that sudden heat was an element of voluntary manslaughter that the State bore the burden of proving. After the defendant was convicted of murder and that conviction was affirmed on direct appeal, this court affirmed the denial of post-conviction relief that had claimed fundamental error and ineffective assistance of counsel with respect to the voluntary manslaughter instruction. This court affirmed on the basis that the instruction also informed the jury that sudden heat was a mitigating factor that reduced murder to voluntary manslaughter. Sanders v. State, 764 N.E.2d 705, 713 (Ind. Ct. App. 2002), trans. denied, cert. denied.

In subsequently granting habeas corpus relief, the Seventh Circuit held the defendant had been denied fundamental due process because the jury had not at any time

been given any instruction properly placing "the burden of proof on the State for showing the absence of sudden heat to gain a <u>murder</u> conviction; rather, the only time the jury instructions mentioned the burden of proof for sudden heat was in the manslaughter instructions," which improperly said the State had to prove the presence of sudden heat. <u>Eichelberger</u>, 852 N.E.2d at 638-39 (citing <u>Sanders</u>, 398 F.3d at 582). As in <u>Sanders</u>, the jury in <u>Eichelberger</u> never was informed that the State had to disprove the existence of sudden heat in order to obtain a murder conviction, whereas in <u>Boesch</u> the jury had been so instructed. On the basis of <u>Sanders</u>, the <u>Eichelberger</u> opinion held that the defendant had received ineffective assistance of trial counsel for failing to ensure the jury was instructed on the proper burden of proof for murder. <u>Id.</u>

As <u>Eichelberger</u> and <u>Sanders</u> make very clear, proper jury instructions in a murder case where there is any appreciable evidence of sudden heat should include an instruction for <u>murder</u> that informs the jury of the State's burden of disproving the existence of sudden heat, as well as an instruction for voluntary manslaughter that properly identifies the State's burden regarding sudden heat. The jury here was not properly instructed. In addition to the legally erroneous language of instruction 13, instruction 4, defining the elements of murder, makes no mention of the State's burden to disprove the existence of sudden heat. Thus, the murder instruction here suffered from precisely the same fatal flaw we identified in <u>Eichelberger</u>—it did not mention the State having to disprove sudden heat in order to obtain a murder conviction. And unlike in <u>Boesch</u>, at no point

14

was the jury otherwise instructed of the State's burden of disproving sudden heat in order to support a murder conviction.

Nor does instruction 13, which mentions sudden heat as a mitigating factor and that the State has the burden of disproving the existence of sudden heat, cure the defect of instruction 4. First, as we have noted, instruction 13 is internally inconsistent in that it also says the State has the burden of <u>proving</u> the existence of sudden heat. More importantly, however, the jury instructions as a whole indicated to the jury that it could <u>only</u> consider convicting Roberson of voluntary manslaughter if it first found him not guilty of murder. Instruction 12 stated in part that the jury "need not" consider whether Roberson had committed voluntary manslaughter if it had found he committed murder. In reading this instruction to the jury, the trial court replaced "need not" with "must not." Instruction 13 likewise begins, "<u>If</u> you find that the Defendant is not guilty of the crime of Murder . . ., you <u>may</u> then consider whether the Defendant is guilty of the included offense of Voluntary Manslaughter . . . ." App. p. 175.

It was a clearly incorrect statement of the law to inform the jury that it could only consider convicting Roberson of voluntary manslaughter instead of murder if it first found him not guilty of murder, given that the jury instruction for murder did not inform the jury that the State had to disprove the existence of sudden heat. Such an instruction might be accurate with respect to lesser included offenses generally, but it is not with respect to voluntary manslaughter, given that the State must prove not only all of the

15

elements of murder but must additionally disprove the existence of sudden heat when there is any appreciable evidence of such. See Watts, 885 N.E.2d at 1232.

Here, the jury was asked to first consider whether Roberson was guilty of murder, and if so, the jury was instructed to cease its deliberations at that point without considering the issue of whether Roberson had acted under sudden heat. In other words, the jury was given an incomplete instruction regarding murder, and it was precluded from considering whether Roberson had acted under sudden heat when the killing occurred if it found the State had proven the basic elements of murder. Indeed, where there is evidence of sudden heat in the record, a jury should be clearly instructed to first consider whether the State has disproved sudden heat and to be asked to choose whether the defendant is guilty of either murder or voluntary manslaughter, simultaneously. We also note that in the present case, unlike in Boesch, neither party explained the proper burden of proof to the jury during their closing arguments. Additionally, given the manner in which the jury was instructed, it would have been legally impossible for it to acquit Roberson of murder but convict him of voluntary manslaughter. Assuming the jury rejected Roberson's self-defense claim, if the jury did not find that he knowingly killed Young, it could convict him of neither murder nor voluntary manslaughter.

We conclude it was deficient performance for trial counsel not to point out to the trial court the errors in instructions 4, 12, and 13, which were clearly defined as errors at

16

the time of Roberson's trial.[5] We further conclude that Roberson was prejudiced by this performance. The evidence of sudden heat in this case was not inconsiderable. It is readily conceivable that had the jury been properly and clearly instructed regarding the State's burden of disproving the existence of sudden heat in order to convict Roberson of murder, that it might have opted to convict him of voluntary manslaughter instead. Roberson did not have to establish that the jury definitely would have convicted him of voluntary manslaughter instead of murder had it been properly instructed; he only had to establish a reasonable probability of such a result. See French, 778 N.E.2d at 824. He met that burden. Having established deficient performance and prejudice, Roberson has proven his claim of ineffective assistance of trial counsel. The post-conviction court erred in finding otherwise.

## Conclusion

Roberson received ineffective assistance of trial counsel with respect to failing to ensure that the jury was properly instructed regarding the elements of murder, voluntary manslaughter, and the State's burden of proof regarding sudden heat. We reverse the denial of Roberson's PCR petition and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GARRARD, SR. J., and CRONE, J., concur.

_____

[5] Roberson's trial was held in 2007; Eichelberger was decided in 2006 and Sanders in 2005.