## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 18 2017, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Appellate Division – Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Isaiah Levert Hughes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 18, 2017

Court of Appeals Case No. 45A03-1606-CR-1317

Appeal from the Lake Superior Court

The Hon. Kathleen A. Sullivan, Judge *Pro Tempore*

Trial Court Cause No. 45G03-1308-MR-7

**Bradford, Judge.**

# Case Summary

On July 12, 2013, Appellant-Defendant Isaiah Levert Hughes fired four shots at B.J. Fullilove. Fullilove later died from his injuries. That same evening at the police station, Hughes voluntarily confessed to firing the shots. On August 27, 2013, Appellee-Plaintiff, the State of Indiana (the "State"), charged Hughes with one count of felony murder.

A jury trial was held from February 8, 2016 through February 12, 2016. At the conclusion of the trial, the jury found Hughes guilty of the lesser offense of voluntary manslaughter. The trial court sentenced Hughes on April 5, 2016, to twenty-five years, with twenty years executed and five years suspended. Hughes filed a motion to correct error that same day. A hearing was held on the motion on May 9, 2016. Following the hearing, the trial court denied Hughes's motion to correct error. On appeal, Hughes contends that the trial court abused its discretion when it gave an instruction on voluntary manslaughter over Hughes's objection. Concluding that the trial court did not abuse its discretion when it gave an instruction on voluntary manslaughter, a lesser offense of felony murder, we affirm.

# Facts and Procedural History

In July of 2013, Kendra Banks and her boyfriend Fullilove lived in Gary, Indiana with their son and daughter. On July 12, 2013, Banks hosted a party, a "girls' night" for her friend LaQuita Glass's birthday. Tr. 143. Glass, Desire

Williams, Kenisha Williams, and Billy D. Borders were the first to arrive at the party. Later in the evening, Hughes and his wife Konica Johnson arrived at the party. Christine Haywood, Nathaniel McIntee, and James Dunkin arrived sometime later. During the party, the guests were drinking, talking, and listening to music inside and outside of Fullilove and Banks's home.

[4] Between two and three in the morning, Fullilove returned home with food and Banks told all of the guests it was time to leave. The guests began to argue and fight each other outside of the home.[1] Around that same time, Banks retrieved Fullilove's firearm from the entertainment center and took it upstairs because she knew that Borders "like[d] to use weapons." Tr. p. 155. Banks again told everyone to leave and Banks then handed the gun to Fullilove before he went upstairs. After approximately two minutes, Fullilove joined Banks in the living room to eat their food.

[5] When the arguing and fighting continued, Fullilove decided to call the police; his 911 call was made at 3:23 a.m. The police never arrived. Around ten minutes later, Glass came to Banks and Fullilove's door to announce that Hughes was fighting someone outside. Fullilove then joined Banks outside and Hughes and Johnson pulled up in a vehicle. When the vehicle stopped, Banks saw that Johnson was pointing "a gun out of the window towards [Fullilove]'s direction and said she was going to shoot." Tr. p. 170. Banks walked over to

---

[1] There as conflicting evidence as to who started the fighting and what prompted the initial argument.

the vehicle and told Johnson that "she wasn't going to shoot him because he was [Banks's] child's father." Tr. p. 171. Johnson subsequently swung the gun at her and they started fighting.

[6] Hughes then exited the vehicle and started fighting Fullilove. Both Hughes and Fullilove began to punch each other. Their fight moved around and they began to wrestle near the edge of the street. At some point, Banks tried to break up the fight, but they continued to wrestle around for approximately five more minutes.

[7] Once Hughes and Fullilove stopped fighting, Hughes ran around to his vehicle and began shooting at Fullilove. Hughes fired his weapon at Fullilove four times. Banks never saw Fullilove with a firearm outside nor did she see him point a gun at Hughes. After shooting, Hughes returned to his vehicle as another vehicle, with McIntee and Duncan inside, pulled in behind him. Once both vehicles left the neighborhood, Banks found Fullilove on the ground bleeding. Fullilove told Banks that "he got shot, and he told [her] to call the ambulance." Tr. p. 185. Banks's 911 call occurred at 3:32 a.m.

[8] Williams returned to the scene and applied pressure to Fullilove's wounds while they waited for the ambulance to arrive. Shortly thereafter, Haywood also returned to the scene. Despite the women's efforts, Fullilove died several days later from injuries.

[9] The State charged Hughes on August 27, 2013, with one count of felony murder. After Hughes learned of the criminal charges, he returned to Indiana

and turned himself in. A jury trial was held on February 8, 2016, and concluded on February 12, 2016. During the trial, the State requested a jury instruction for voluntary manslaughter, which request the trial court granted over Hughes's objection. Hughes renewed his objection and the trial court, again, over-ruled the objection to the voluntary manslaughter instruction. After deliberations, the jury found Hughes guilty of the lesser offense of voluntary manslaughter.

# Discussion and Decision

[10] Hughes argues that the trial court improperly instructed the jury on voluntary manslaughter, at the State's request, during his trial for felony murder.

> The manner of instructing a jury is left to the sound discretion of the trial court. Its ruling will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. Jury instructions must be considered as a whole and in reference to each other.

*Patton v. State*, 837 N.E.2d 576, 579 (Ind. Ct. App. 2005) (internal citations omitted).

[11] In the present case, the trial court gave an instruction for voluntary manslaughter, a lesser offense of murder. To determine whether an instruction for a lesser offense should be given, the trial court must consider the following in a three-step analysis:

> 1) a determination of whether the lesser included offense is inherently included in the crime charged; if not, (2) a determination of whether the lesser included offense is factually included in the crime charged; and, if either, (3) a determination of whether a serious evidentiary dispute existed whereby the jury could conclude the lesser offense was committed but not the greater.

*Clark v. State*, 834 N.E.2d 153, 157 (Ind. Ct. App. 2005) (citing *Wright v. State*, 658 N.E.2d 563, 566-67 (Ind. 1995)).  If there is evidence of a substantial evidentiary dispute about an element distinguishing the offenses, and a jury could conclude that the lesser offense, but not the greater offense was committed, a court cannot reject the tendered instruction for the lesser offense if requested to do so; failure to give such instruction would be reversible error. *Wright*, 658 N.E.2d at 567.

[12]     Although voluntary manslaughter is a lesser included offense of murder, it is not a 'typical' lesser included offense, because instead of requiring the State to prove less than all the elements of murder, it requires the State to prove all of the elements of murder *and* disprove the existence of sudden heat when there is any appreciable evidence of such in the record.  Additionally, a conviction for voluntary manslaughter constitutes an acquittal of murder.  The absence of sudden heat is not an element of murder, and a jury ordinarily does not have to be instructed that the State has the burden of disproving the existence of sudden heat in order to gain a murder conviction.  If there is no evidence in the record of sudden heat, the jury need not be instructed that the State bears the burden of disproving the existence of sudden heat.  If, however, the record contains any appreciable evidence of sudden heat, an instruction on voluntary manslaughter is justified.  Additionally, such evidence may arise from either the

> State's or the defendant's evidence; the defendant does not bear the burden of placing the issue of sudden heat into question.

*Roberson v. State*, 982 N.E.2d 452, 457 (Ind. Ct. App. 2013) (internal citations omitted).

[13] "Sudden heat" has been defined as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." *Id*. Additionally, "any alleged provocation must be such that it would obscure the reason of an 'ordinary man,' which is an objective as opposed to subjective standard." *Id*. at 457. However, "[u]nlike the right to self-defense, which ceases to exist once a danger has passed, sudden heat can survive for a while beyond the act of provocation." *Id*. at 457 (internal citation and quotations omitted). Therefore, "[a]ny appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter." *Washington v. State*, 808 N.E.2d 617, 626 (Ind. 2004).

[14] After a review of the evidence and record, we conclude that there was ample evidence of possible sudden heat. Throughout the early morning of July 13, 2013, there was evidence that Fullilove and Hughes were fighting and that Fullilove threw the first punch. There was also evidence in the record that Hughes, not Fullilove, was the initial aggressor. Hughes himself testified that he was upset the night of the party because he saw women, including Fullilove's girlfriend, attacking his wife. There was also evidence that Hughes's wife aimed a gun at Fullilove and swung her gun at Fullilove's girlfriend.

Fullilove's girlfriend also testified that the fighting between Fullilove and Hughes lasted three to five minutes before the shooting occurred. Consequently, based upon the above-mentioned evidence, there was sufficient evidence of rage, anger, and resentment to warrant an instruction on the lesser-included offense of voluntary manslaughter.

[15] We affirm.

Vaidik, C.J., and Brown, J., concur.