## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2018, 7:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Ryan Patrick Rucker
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan Patrick Rucker,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

February 16, 2018

Court of Appeals Case No.
35A02-1610-PC-2461

Appeal from the Huntington
Circuit Court

The Honorable Thomas M. Hakes,
Judge

Trial Court Cause No.
35C01-1208-PC-11

**Baker, Judge.**

[1] Ryan Rucker appeals the post-conviction court's denial of his petition for post-conviction relief, arguing that the post-conviction court erred by refusing to issue subpoenas or admit certain evidence and by finding that Rucker did not receive the ineffective assistance of counsel. Finding no error, we affirm.

## Facts

[2] On October 18, 2011, Rucker was charged with child molesting. On March 12, 2012, pursuant to a plea agreement, Rucker pleaded guilty to Class A felony child molesting. The plea agreement stated that Rucker was satisfied with his first trial counsel's representation and that counsel had "done everything" that Rucker asked him to do and had "not done anything" that Rucker had asked him "not to do." Appellant's App. Vol. III p. 49. Rucker also admitted that the facts in the charging information and probable cause affidavit "are true and constitute a factual basis for [his] plea of guilty." *Id.* In the plea agreement, Rucker stated that he knew that the trial court would not accept a guilty plea from anyone who claimed to be innocent, that he did not make a claim of innocence, and that he was guilty of the crime to which he was pleading guilty.

[3] A guilty plea hearing took place on March 12, 2012, during which Rucker admitted that while staying overnight at his friends' home, he entered the bedroom of their eight-year-old daughter, approached her while she was asleep, pulled down her underwear, and licked her vagina. When the child told him to stop, Rucker left the room. The trial court found that there was a factual basis

for Rucker's guilty plea and that his guilty plea was made freely and voluntarily.

[4] On March 20, 2012, Rucker's first trial counsel moved to withdraw his appearance. On March 21, 2012, Rucker filed several motions, including a motion to withdraw his guilty plea. On March 26, 2012, the trial court denied Rucker's motions, granted his first trial counsel's motion to withdraw, and appointed Rucker's second trial counsel.

[5] On April 23, 2012, Rucker filed a second motion to withdraw his guilty plea. A hearing on his second motion took place on May 7, 2012, during which Rucker stated that he felt he had been "unduly influenced" when he had admitted to the factual basis as part of his guilty plea. Appellant's App. Vol. V p. 44. Rucker explained that when he was offered the plea agreement, he was told that if the case went to trial, he would likely lose and could be sentenced to fifty years. The trial court asked Rucker how that unduly influenced him, to which Rucker replied, "The way it was proposed to me I suppose your honor. I felt compelled . . . ." *Id.* at 49.

[6] On May 10, 2012, the trial court denied Rucker's motion. On May 21, 2012, a sentencing hearing took place during which the trial court accepted Rucker's guilty plea and sentenced him to twenty-five years imprisonment. On the day of the sentencing hearing, Rucker and his second trial counsel talked about the possibility of post-conviction relief. Counsel suggested that Rucker should seek post-conviction relief instead of a direct appeal of the denial of his motion to

withdraw the guilty plea. On June 6, 2012, Rucker's second trial counsel filed a motion to withdraw his appearance; the trial court granted this motion the following day.

[7] On July 9, 2012, Rucker wrote a letter to his second trial counsel, asking why counsel had suggested that Rucker pursue post-conviction relief rather than a direct appeal and requesting relevant documents and clarification of counsel's suggestions about post-conviction remedies. Rucker also asked counsel how long Rucker could wait before filing a belated appeal. On July 19, 2012, Rucker's second trial counsel replied that Rucker had a better chance of success with a petition for post-conviction relief. Counsel explained that because Rucker had pleaded guilty, the only issue that Rucker could raise on direct appeal was that the trial court erred by denying his motion to withdraw his guilty plea. Counsel also told Rucker that to pursue a belated appeal, Rucker would have to be diligent in filing it within a reasonable amount of time.

[8] On August 23, 2012, Rucker filed a petition for post-conviction relief and was appointed counsel. Two years later, on August 28, 2014, that counsel filed a motion to withdraw; the next day, the post-conviction court granted the motion.

[9] On November 17, 2014, Rucker filed a pro se motion to amend his petition for post-conviction relief. On November 19, 2014, the post-conviction court directed Rucker to submit evidence by affidavit. On January 6, 2015, Rucker

filed a second motion to amend the petition for post-conviction relief; the next day, the post-conviction court granted permission to amend the petition.

[10] On February 6, 2015, Rucker filed a final amended petition for post-conviction relief. On March 4, 2015, Rucker filed an affidavit in support of his amended petition and a "List of Affidavit Evidence." Appellant's App. Vol. II p. 5. On March 31, 2015, the State filed a motion to strike Rucker's exhibits and a motion to strike portions of his affidavit. On April 22, 2015, Rucker filed an amended affidavit in support of his petition. On April 30, 2015, the post-conviction court granted the State's motions.

[11] On April 13, 2015, Rucker filed a petition for permission to file a belated notice of appeal of the denial of his 2012 motion to withdraw his guilty plea. On August 26, 2015, the trial court denied Rucker's petition to file a belated notice of appeal. Rucker then filed a direct appeal from that denial, arguing that the trial court erred by finding that Rucker had not diligently pursued a direct appeal of the denial of his motion to withdraw his guilty plea. We affirmed in a memorandum decision. *Rucker v. State*, No. 35A05-1509-CR-01448, *1 (Ind. Ct. App. Apr. 7, 2016), *reh'g denied, trans. denied*.

[12] On April 27, 2016, the post-conviction court scheduled an evidentiary hearing. On June 22, 2016, Rucker filed a request for the issuance of four subpoenas for the evidentiary hearing. On June 27, 2016, the post-conviction court denied the request, noting that Indiana Trial Rule 45 "was not properly followed." Appellant's App. Vol. II p. 9. During the July 20, 2016, evidentiary hearing,

Rucker acknowledged that he had not made a claim of innocence when he had pleaded guilty and stated that he had lied under oath at his guilty plea hearing. He also testified that he thought that, by pleading guilty, he was "doing the chivalry thing." PCR Tr. p. 39. On September 27, 2016, the post-conviction court denied Rucker's petition for post-conviction relief. Rucker now appeals.

## Discussion and Decision

[13] Rucker makes several claims on appeal, which we consolidate and restate as: whether the post-conviction court erred by denying his requests to subpoena several witnesses, by refusing to admit certain evidence, and by finding that Rucker did not receive the ineffective assistance of counsel.[1]

[14] The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment.

---

[1] Rucker also asserts that his counsel failed to advise him of the penal consequences of his guilty plea, namely that he would automatically be classified as a sexual violent predator and that he would be ineligible for sentence modification, and that the trial court erred by failing to advise him that he could appeal the denial of his motion to withdraw his guilty plea, failing to advise him that he would be classified as a sexually violent predator, and by accepting an "illusory plea." Appellant's Br. p. 41-46. Rucker did not raise these issues in his petition for post-conviction relief; therefore, he has waived these issues on appeal. *See Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal.").

Rucker also states that the post-conviction court erred by ordering him to tender fees as an indigent, incarcerated litigant. Because he offers no support for this statement, we decline to address it. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.") (citing Ind. Appellate Rule 46(A)(8)(a)).

*Shanabarger v. State*, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006). On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.*

# I. Subpoenas

Rucker contends that the post-conviction court erred by denying his subpoena requests for both of his attorneys and for Christina Wood, a witness.[2] Indiana Post-Conviction Rule 1(9)(b) provides in relevant part that

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

Thus, the post-conviction court has discretion whether to grant or deny a petitioner's request for a subpoena. *Johnson v. State*, 832 N.E.2d 985, 994 (Ind. Ct. App. 2005). Subpoenas may be served "at any place within the state." Ind. Trial Rule 45(E). Ordinarily, an Indiana court cannot "compel the attendance

---

[2] In addition, Rucker contends that the post-conviction court erred by denying his subpoena request for Steven Adang, who administered his polygraph test. Rucker offers no argument regarding this particular subpoena. Therefore, we decline to address the issue.

of an out-of-state witness over whom the court does not have jurisdiction." *Collins v. State*, 14 N.E.3d 80, 84 (Ind. Ct. App. 2014). "However, 'when permitted by the laws of the United States, this or another state . . . the court upon proper application and cause shown may authorize the service of a subpoena outside the state in accordance with and as permitted by such law.'" *Id.* (quoting T.R. 45(E)).

[16] The post-conviction court denied Rucker's requests because Trial Rule 45 "was not properly followed." Appellant's App. Vol. II p. 9. In Rucker's requests for subpoenas, he provided out-of-state addresses; the requests indicated that his first trial counsel lived in Michigan, his second trial counsel lived in Nebraska, and Wood lived in Minnesota. Appellant's App. Vol. IX p. 22, 25, 28. Because these three people lived in different states, the post-conviction court would have needed cause to issue the subpoenas. The cause that Rucker provided was inappropriate—he cited to Indiana Code section 35-37-5-2 regarding the Uniform Act to Secure the Attendance of Witnesses From Outside the State in Criminal Proceedings. As the title indicates, however, this statute applies to summoning witnesses from other states to testify in a grand jury or criminal proceeding. Ind. Code § 35-37-5-1. But a post-conviction proceeding is civil, not criminal, in nature. *Roberson v. State*, 982 N.E.2d 452, 455 (Ind. Ct. App. 2013). Accordingly, Rucker did not show cause that would authorize the post-conviction court to issue subpoenas for these three out-of-state witnesses. Rucker's argument on this basis is unavailing.

# II. Admission of Evidence

Rucker next argues that the post-conviction court erred by not admitting certain evidence. Specifically, the post-conviction court found that letters and emails written by Rucker, Rucker's attorneys, and Rucker's friend April Suchy, and affidavits from Rucker and Rucker's father, constituted inadmissible hearsay.

The admission or exclusion of evidence is within the post-conviction court's sound discretion. *Badelle v. State*, 754 N.E.2d 510, 521 (Ind. Ct. App. 2001). "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally not admissible unless it falls within one of the hearsay exceptions. *See* Evid. R. 802.

Rucker first argues that letters that he and his attorneys wrote and emails that his first attorney wrote to the prosecutor were admissible because they fall under the business records exception to the hearsay rule. This exception includes:

> A record of an act, event, condition, opinion, or diagnosis if:
>
> > (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> > (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Evid. R. 803(6). The post-conviction court found that letters written in the course of legal representation about legal opinions did not constitute records kept in the course of regularly conducted business activity. We agree that the evidence Rucker wanted to admit does not meet the requirements set forth in this exception—he did not lay a proper foundation for the documents as required by Rule 803(6)(D). On appeal, Rucker states that, following his hearing for his petition for post-conviction relief, he obtained certification from each attorney's office showing that the documents he submitted were created during the course of regularly conducted business. However, because these certifications were not offered at the post-conviction hearing, they have no impact on the post-conviction court's ruling or on our analysis. The post-conviction court did not err by declining to admit this evidence.

[20] Rucker next argues that the post-conviction court erred by not admitting affidavits from his father and from himself and a letter from his long-time friend April Suchy because the documents fall under the exception to the hearsay rule

for a statement of personal or family history. This exception includes a statement about

> (A) the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact; or

> (B) another person concerning any of these facts, as well as death, if the declarant was related to the person by blood, adoption, or marriage or was so intimately associated with the person's family that the declarant's information is likely to be accurate.

Evid. R. 804(b)(4). The affidavit from Rucker's father concerned Rucker's legal representation and plea agreement; Rucker's affidavit concerned his crime; and Suchy's letter concerned Rucker's relationship with Wood. None of this evidence constitutes a statement of personal or family history as outlined by Evidence Rule 804(b)(4). The post-conviction court did not err by not admitting this evidence.

## III. Ineffective Assistance of Counsel

Rucker also asserts that he received the ineffective assistance of counsel because his first trial counsel did not call certain witnesses, permitted Rucker to take a polygraph test, and allowed him to plead guilty. He also argues that his second trial counsel was ineffective for advising him to forgo a direct appeal.

A claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012).

## A. Witness

Rucker contends that his first trial counsel failed to call Wood as a witness, despite the fact that, according to Rucker, Wood would have testified that Rucker was innocent. According to Rucker, Wood told counsel "that initially when she had been questioned about the events of that night she stated that she 'hadn't seen anything,' purely because she 'had her own things going on' and that she 'did not want to get involved.'" Appellant's App. Vol. VI p. 5-6. Rucker also stated that Wood told his first trial counsel "that she had known Rucker for many years and did not believe that he was even capable of committing such a crime." *Id.* at 6. It is apparent that Wood had little to no relevant or probative information, aside from a mere belief about Rucker's

character, that would have corroborated his claim of innocence. Rucker's first trial counsel could have reasonably concluded that Wood's testimony would not have benefitted Rucker, and we will not second guess that strategic decision. The post-conviction court did not err by finding that Rucker did not receive the ineffective assistance of counsel on this basis.

## B. Polygraph Test

[24] Next, Rucker argues that his first trial counsel was ineffective by recommending that he take a polygraph test and by not being present during the administration of the test. After Rucker's first trial counsel suggested that Rucker take the polygraph test, Rucker told him that he had "no problem" doing so, but that he wanted to decide who would administer it. Appellant's App. Vol. III p. 14. Before taking the polygraph test, Rucker signed a waiver form stating that he understood his rights to remain silent, to talk to a lawyer, to have a lawyer with him during questioning, and to stop answering questions at any time, and that he was willing to make a statement and answer questions without talking to a lawyer or having one present. *Id.* at 25. He also signed the polygraph consent form, thereby acknowledging that he could not be required to submit to a polygraph test and that he could terminate the test at any time, and requesting a test be administered to him. *Id.* at 27. Further, during Rucker's evidentiary hearing on his petition for post-conviction relief, he testified that his first trial counsel had told him that he would not be present for the polygraph test. PCR Tr. p. 29-30.

In short, Rucker knew that his counsel would not be present for the polygraph test, understood his rights, and still agreed to take the test. Counsel is not ineffective simply because he was not present during a polygraph exam, *Williams v. State*, 489 N.E.2d 594, 598 (Ind. Ct. App. 1986), nor is counsel ineffective merely because a defendant regrets agreeing to take a polygraph exam, *Marsillett v. State*, 495 N.E.2d 699, 707 (Ind. 1986). Moreover, Rucker offered no evidence to show that, but for taking the polygraph exam, there is a reasonable probability that he would have proceeded to trial rather than have pleaded guilty. In other words, he has shown no prejudice stemming from the polygraph test. The post-conviction court did not err by not finding ineffective assistance of counsel on this basis.

## C. Guilty Plea

Rucker also contends that his first trial counsel's advice to enter a guilty plea amounted to the ineffective assistance of counsel. Specifically, he contends that counsel failed to prepare a defense based on his claim of innocence. "In order to establish that the guilty plea would not have been entered if counsel had performed adequately, the petitioner must show that a defense was overlooked or impaired and that the defense would likely have changed the outcome of the proceeding." *Segura v. State*, 749 N.E.2d 496, 499 (Ind. 2001).

Rucker's first trial counsel stated that he had discussed the facts of the case with Rucker, that he believed the plea agreement to be in Rucker's best interest, and that he represented that there would be no advantage to Rucker if the case were

to proceed to trial. PCR Ex. B. Rather than overlooking a defense of innocence, Rucker's counsel likely considered how a jury would evaluate the testimony of a child molestation victim, reasonably concluded that Rucker would face a strong probability of being convicted if the case went to trial, and determined that trying to secure as minimal a sentence as possible would be the best defense strategy. Under the plea agreement, Rucker was sentenced to twenty-five years; had he proceeded to trial, he would have faced a sentence of up to fifty years. This was a reasonable strategic decision that we will not second guess. Rucker did not establish that his counsel's performance was deficient or prejudicial on this basis.

## D. Advice Regarding Direct Appeal

[28] Rucker argues that his second trial counsel failed to advise him that the trial court's denial of his motion to withdraw his guilty plea was reviewable on direct appeal. However, Rucker acknowledges that his second trial counsel advised him in a July 19, 2012, letter that Rucker could have directly appealed the trial court's denial of his request to withdraw his guilty plea. Appellant's Br. p. 39. In that letter, counsel explained that

> There is no time limit, strictly speaking, on a belated appeal. You have to be diligent in pursuing it and file within a reasonable time. The rule is similar to the rule for filing PCR.

> The reason I recommended PCR to you was that because the judge accepted the plea, you waived your rights to a direct appeal. The only issue you could possibly have raised on a direct appeal was that the trial court denied your request to withdraw

the plea. You can still allege that the plea was improper at the PCR stage, and in fact I believe you have a better shot because PCR will give you plenty of opportunity to question [first trial counsel's] tactics and to tell the judge every reason why your plea was not knowing and voluntary or, alternatively, based on ineffective representation. My fear was that if you tried to attack your plea comprehensively at the withdrawal stage, you might pass up a better chance to clear this up. My recommendation was based on what I thought was the best option as far as giving you a chance at a win.

The cases you cite, when I last checked, apply to situations where during the guilty plea hearing itself, a person protests his own innocence. Thus, if at the plea when you initially agreed to the 25 years, you turned around and said, for example, that you were just doing this because "your attorney told you" and you really did nothing wrong, the plea would be invalid. However, the fact that you came back later and said that you were not guilty does not mean that the judge must allow you to withdraw your plea. [For] whatever reason, the law treats it as two different situations.

Appellant's App. Vol. IV p. 11.

[29] Despite this advice, Rucker did not request permission to file a belated appeal until August 13, 2015, more than three years after his second trial counsel wrote him the above letter. By that time, this Court found that Rucker had not been diligent in pursuing a belated direct appeal. *Rucker*, slip. op at *3. Thus, Rucker was unable to pursue a direct appeal not because of counsel's performance but because he significantly delayed requesting one.

[30] Moreover, Rucker does not show that, had he appealed the trial court's denial of his motion to withdraw his guilty plea, this Court would have found that the trial court erred in its ruling. "After a defendant pleads guilty but before a sentence is imposed, a defendant may motion to withdraw a plea of guilty." *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001) (citing Ind. Code § 35-35-1-4(b)). The trial court must grant a defendant's motion to withdraw his guilty plea if necessary to correct a manifest injustice. *Id.* The trial court must deny the defendant's motion if withdrawal of the plea would substantially prejudice the State. *Id.* In all other cases, the trial court may grant the defendant's motion for any fair and just reason. *Id.*

[31] At the hearing on Rucker's motion to withdraw his guilty plea, Rucker stated that he felt he had been "unduly influenced" when he had agreed to the facts stated in the factual basis when he had entered his guilty plea. Appellant's App. Vol. V p. 44. Rucker explained that when he was offered the plea agreement, he was told that if the case went to trial, he would likely lose and could be sentenced to fifty years. The trial court asked Rucker how that unduly influenced him, to which Rucker replied, "The way it was proposed to me I suppose your honor. I felt compelled . . . ." *Id.* at 49.

[32] The trial court was in the best position to determine whether withdrawing Rucker's guilty plea was necessary to correct a manifest injustice or whether Rucker was simply experiencing a case of buyer's remorse. At his guilty plea hearing, Rucker stated that his decision to plead guilty was his own free choice, and in his plea agreement, he stated that he was satisfied with his counsel's

representation; that he had discussed the facts, circumstances, and possible defenses with counsel; and that his decision to plead guilty was made freely and voluntarily. Considering these circumstances, Rucker did not establish that withdrawal of his guilty plea was necessary to correct a manifest injustice, and the trial court did not err by denying his motion. Therefore, even if Rucker had filed a timely appeal on this issue, he likely would have been unsuccessful. Accordingly, he does not show that his counsel performed deficiently or that he was prejudiced by counsel's advice regarding a direct appeal.

[33] In sum, Rucker did not establish that he received the ineffective assistance of counsel.

[34] The judgment of the post-conviction court is affirmed.

Riley, J., and Robb, J., concur.