## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 18 2019, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Borahm Kim
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward Lay,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

April 18, 2019

Court of Appeals Case No.
18A-PC-1598

Appeal from the Marion Superior Court

The Honorable Sheila A. Carlisle, Judge

The Honorable Stanley Kroh, Magistrate

Trial Court Cause No.
49G03-1407-PC-34413

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Edward Lay was found guilty of two counts of murder, a felony, and one count of attempted murder, a Class A felony. The trial court sentenced Lay to an aggregate sentence of 140 years executed in the Indiana Department of Correction. On direct appeal, we affirmed Lay's convictions. *Lay v. State*, No. 49A05-1208-CR-387 (Ind. Ct. App. Apr. 30, 2013), *trans. denied.* Thereafter, Lay filed a petition for post-conviction relief wherein he alleged ineffective assistance of trial and appellate counsel, which the post-conviction court denied. Lay now appeals, raising two issues for our review: (1) whether the post-conviction court erred in concluding Lay's trial counsel was not ineffective, and (2) whether the post-conviction court erred in concluding Lay's appellate counsel was not ineffective. Concluding Lay did not receive ineffective assistance of trial or appellate counsel, we affirm.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in Lay's direct appeal:

> In August 2011, Lay, estranged from his wife, was dating Mary Swift. Lay had recently moved into Mary's Fountain Square home in Indianapolis, in which Mary's nine-year-old daughter Alley, Mary's twenty-year-old daughter Brittany Swift, Brittany's one-year-old son, and Brittany's boyfriend Joshua Edenfield also lived.

On the evening of Thursday, August 11, 2011, Lay's longtime friend Ron Kortz and his fiancee Kelly Jinks went to Mary's house to celebrate their new home and Ron's acceptance back into college. Ron and Kelly arrived around 8:00 p.m. with a bottle of Patron tequila. They went to Mary and Lay's bedroom, which was the normal place to "hang out." Brittany joined the party while Josh was at work. After the Patron tequila was gone, Lay and Ron went to a friend's house to get more tequila. After the second bottle of tequila was gone, Ron went with Josh, who had just returned home from work, to the liquor store and bought two bottles of Bambitos tequila. Josh did not drink any alcohol that night.

Sometime during the night, nine-year-old Alley was awakened by Lynyrd Skynyrd's "Sweet Home Alabama" coming from the bedroom. She went downstairs to complain because she had school in the morning. Mary and Brittany asked Lay to turn down the music, but he refused. An argument ensued, and Mary and Brittany told Lay to leave. Lay refused, calling Mary and Brittany "fuc*ing bit* *es," "who*es," and "cun*s who "couldn't tell him what to do." A shoving match ensued between Mary and Brittany and Lay. As Mary and Brittany inched Lay out the door, he grabbed a black bag that was inside a box. At the time, no one knew what was inside the black bag.

The arguing continued in the kitchen and then spilled out onto the back porch, where Lay continued to yell that Mary and Brittany could not make him leave. Brittany responded that Lay was being "disrespectful" and "need[ed] to go for the night" but "c[ould] come back tomorrow." Lay responded, "Well I got my 40, bit* *." Lay then backed down the ramp from the back porch toward the area where the cars were parked. Josh tried to calm Lay down; however, Lay put a gun to Josh's face and said something that Josh could not understand. Josh swatted the gun away, saying, "Hey, I'm not down here to fight." Lay turned

around and went to the passenger side of Kelly's car, where Ron and Kelly tried to get him inside.

The situation did not diffuse; rather, it escalated. Lay began threatening Brittany, so she swung at him and missed. Lay then hit Brittany in the face four or five times, which prompted her mother Mary to join the melee. Ron pulled Brittany away and brought her to where Josh was standing at the bottom of the ramp. Josh tried to corral Mary and bring her back toward the house, but he failed. Josh managed to move Brittany farther up the ramp as Mary yelled at Lay and hit him in retribution for hitting her daughter.

As Josh turned back toward the cars, he heard three or four gunshots that happened "so fast" and then saw Lay running away. He also saw Ron asking Kelly if she had been hit. Brittany, however, saw Lay push Mary down to her hands and knees, point the gun at her from behind, and then she heard gun shots. Brittany did not see Lay pull the trigger because she fell through a loose board on the ramp. Brittany ran to her mother. When Brittany realized her mother was not able to talk, she ran back to her sister, Alley, who was screaming on the back porch. Lay shot Mary, Kelly, and Ron. Josh called 911 to report the shootings.

Ron suffered a gunshot wound to his right shoulder. According to Ron, Lay shot him as he confronted Lay for shooting Kelly. Ron took a few steps and collapsed in the alley by Kelly. When Ron landed, he saw Mary on the ground near the car.

Ron was taken to the hospital where he underwent surgery and was released a week later. He now has no feeling in his right arm and cannot hold a coffee cup in his right hand.

Mary and Kelly, however, suffered fatal wounds.  Mary was dead when emergency personnel arrived.  Mary suffered a gunshot wound to the top of her head.  The bullet traveled downward and exited the right side of her forehead, lacerating her brain and fracturing her skull.  Kelly was taken to the hospital but was pronounced dead a couple hours later.  Kelly suffered a gunshot wound to her chest and left buttock.  The gunshot wound to Kelly's chest perforated her diaphragm and lacerated her liver, causing blood accumulation in her right chest cavity.  The other gunshot wound traveled across Kelly's pelvic cavity and landed in her right hip.  Kelly died as a result of blood loss from both gunshot wounds.

The police apprehended Lay within a few blocks of the scene.  Four spent shell casings were found at the scene.

The State charged Lay with the murders of Mary and Kelly and the attempted murder of Ron.  A two-day jury trial was held in June 2012, during which Lay argued self-defense.

*Id.* at *1-3 (citations and footnote omitted).

[3]     At trial, Dr. Ken Obenson, a forensic pathologist, testified that the gunshot wound to Mary entered at the top of her head on the left side, travelled downward, and exited above her right brow.  He further testified that exit wounds tend to be smaller than entrance wounds and that entrance wounds generally have abrasion collars caused by the bullet rubbing the skin around it.

[4]     During trial, Lay's counsel tendered instructions for the lesser-included offenses of voluntary manslaughter for Count I, involuntary manslaughter and reckless homicide for Count II, and criminal recklessness for Count III.  The trial court

granted Lay's request for voluntary manslaughter instructions to be given on Count I. Trial counsel then withdrew the tendered instruction on involuntary manslaughter for Count II and proceeded with an instruction on reckless homicide in order "to keep it clean." [Trial] Transcript, Volume II at 303. The trial court also gave the State's requested instruction on transferred intent.

[5] On June 26, 2012, the jury found Lay guilty as charged, i.e., guilty of two counts of murder, both felonies, and one count of attempted murder, a Class A felony. On July 19, 2012, the trial court sentenced Lay to an aggregate term of 140 years.

[6] On direct appeal, Lay's appellate counsel raised three issues: (1) whether the trial court committed fundamental error by allowing the parties to make additional argument to the jury in response to the jury's question about transferred intent during deliberations; (2) whether the evidence was sufficient to sustain his convictions; and (3) whether his 140–year sentence was inappropriate. *Lay*, No. 49A05-1208-CR-387 at *3. A panel of this court affirmed the trial court in all respects. *Id.* at *1.

[7] On July 7, 2014, Lay filed a pro se petition for post-conviction relief, later amended by counsel, alleging ineffective assistance of trial and appellate counsel. Evidentiary hearings were held on August 16, 2016, January 17, 2017, and March 20, 2018. On June 8, 2018, the post-conviction court issued written findings of fact and conclusions of law denying Lay's petition. Lay now

appeals the denial of post-conviction relief. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Standard of Review

Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). These proceedings, however, are not an opportunity for a super-appeal. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind. 1998), *cert. denied*, 528 U.S. 861 (1999). Thus, we may not reweigh the evidence or reassess the credibility of the witnesses and we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006). The petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Strowmatt v. State*, 779 N.E.2d 971, 975 (Ind. Ct. App. 2002).

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. We

accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law.[1] *Wilson v. State*, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003).

## II. Ineffective Assistance of Trial and Appellate Counsel

### A. Standard of Review

Lay claims the post-conviction court erred in concluding his trial and appellate counsel were not ineffective. Specifically, he claims he was denied the effective assistance of trial counsel when counsel failed to object to final jury instructions 30 and 31, failed to request a voluntary manslaughter instruction for the killing of Kelly, and failed to call an expert witness to rebut the testimony of the State's pathologist. Lay also claims he was denied the effective assistance of appellate counsel when appellate counsel failed to argue that the error in final jury instructions 30 and 31 was fundamental error.

The standard for ineffective assistance of both trial and appellate counsel is the same. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, the petitioner must show 1) his counsel's performance was deficient, and 2) the lack of reasonable representation prejudiced him. *Id.* at 687. These two prongs are

---

[1] Although we do not defer to the post-conviction court's conclusions of law, we commend the post-conviction court for its thorough and well-reasoned Findings of Fact and Conclusions of Law Denying Post-Conviction Relief, which has aided our review of this case.

separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied, cert. denied*, 135 S.Ct. 2376 (2015). Therefore, "if it is easier to dispose of an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

[12] The first prong requires that the petitioner show counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have "counsel" as guaranteed by the Sixth Amendment of the United States Constitution. *Garrett,* 992 N.E.2d at 718-19. To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 719. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

[13] We afford counsel "considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake*, 753 N.E.2d at 603. We also recognize a strong presumption that counsel rendered adequate legal assistance. *Id.* The defendant must offer "strong and convincing evidence to overcome this presumption." *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

# B. Trial Counsel

Lay argues the post-conviction court erred in concluding his trial counsel was not ineffective because his trial counsel failed to object to final jury instructions 30 and 31, failed to request an instruction, and failed to call an expert witness.

## 1. Instructional Error

First, Lay alleges that his trial counsel should have objected to final jury instructions 30 and 31. Relevant here, the trial court provided the following final jury instructions:

[Final Jury Instruction 30]

The defendant is charged with murder a felony. Voluntary manslaughter a Class A felony, is included in Count I, murder a felony. *If the State proves the defendant guilty of murder a felony, you need not consider the included crime*. However, if the State fails to prove the defendant committed murder a felony, you may consider whether the defendant committed voluntary manslaughter a Class A felony, which the court will define for you.

You must not find the defendant guilty of more than one crime for each count.

[Final Jury Instruction 31]

The crime of murder is defined by law as follows:

A person who knowingly or intentionally kills another human being, commits murder, a felony. Included in the charge

in this case is the crime of voluntary manslaughter, which is defined by the law as follows: A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. The offense is a Class A felony if it is committed by means of a deadly weapon.

Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. The State has the burden of proving beyond a reasonable doubt that the defendant was not acting under sudden heat.

Before you may convict the defendant, the State must have proved each of the following beyond a reasonable doubt:

1. The defendant, Edward L. Lay

2. knowingly or intentionally

3. killed

4. another human being, namely: Mary Swift, by shooting a deadly weapon, that is: a gun, at and against the person of Mary Swift, thereby inflicting mortal injuries upon Mary Swift, causing Mary Swift to die

5. and the defendant was not acting under sudden heat

6. and the defendant killed by means of a deadly weapon.

> If the State failed to prove each of these elements 1 through 4 beyond a reasonable doubt, you must find the defendant not guilty of murder as charged in Count I.
>
> If the State did prove each of these elements 1 through 4 and element 6 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you may find the defendant guilty of voluntary manslaughter, a Class A felony, a lesser included offense of Count I.
>
> If the State did prove each of these elements 1 through 5 beyond a reasonable doubt, you may find the defendant guilty of murder, a felony as charged in Count I.

[Direct Appeal] Appellant's Appendix at 209-11 (capitalization omitted and emphasis added).

[16] Lay's argument regarding the failure to object to the jury instructions is twofold. He first alleges there was a sequencing error regarding the sentence in final jury instruction 30 that provides, "If the State proves the defendant guilty of Murder a felony, you need not consider the included crime." *Id.* at 209. Specifically, Lay contends that the sentence "erroneously precluded the jury from considering voluntary manslaughter if they found Lay committed a knowing killing even though voluntary manslaughter (Ind. Code 35-42-1-3) and murder (Ind. Code 35-42-1-1(1)) have the same elements—a knowing or intentional killing of another person." Brief of Petitioner-Appellant at 17. Lay further alleges that although "[t]rial counsel did not see the error at the time of trial . . . [s]he now agrees the instruction was erroneous and the failure to object

to it was a glaring error." *Id.* at 18. This failure to object, Lay contends, constituted deficient performance.

[17] Second, Lay alleges that final jury instruction 31 "incorrectly lists sudden heat as an element" when, in fact, it is a "mitigating factor that reduces what would otherwise be murder to voluntary manslaughter." *Id.* at 19. Specifically, Lay contends that "[a]lthough final instruction 31 does in one place correctly address sudden heat as a mitigating factor, the error of additionally addressing it as an element[,] coupled with the sequencing error in final instruction 30, precluded the jury from properly considering voluntary manslaughter." *Id.* at 19-20.

[18] Assuming for the purposes of this appeal that trial counsel's failure to object to final jury instructions 30 and 31 constituted deficient performance, Lay fails to carry his burden to show that but for counsel's failure to object, there is a reasonable probability that the outcome of his trial would have been different. *See Benefield v. State,* 945 N.E.2d 791, 805 (Ind. Ct. App. 2011). Our supreme court has previously explained:

> When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions. There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law.

*Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind. 2002) (citations omitted).

[19]     Here, although one sentence in final jury instruction 30 is potentially confusing, we conclude that all the information provided to the jury, considered as a whole, did not mislead the jury as to a correct understanding of the law. First, the trial court expressly informed the jury that "in considering any one instruction[,] you should construe it in connection with, and in light of, every other instruction given." [Direct Appeal] Appellant's App. at 199. Second, final jury instruction 31, the instruction that immediately followed final jury instruction 30, correctly explained the relevant law:

> Included in the charge in this case is the crime of voluntary manslaughter, which is defined by the law as follows: A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony. The offense is a Class A felony if it is committed by means of a deadly weapon.

> Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. *The State has the burden of proving beyond a reasonable doubt that the defendant was not acting under sudden heat.*

*Id.* at 210 (emphasis added). And third, in the words of the post-conviction court, the deputy prosecutor "in his closing argument in Lay's case, also explained that the State had to disprove sudden heat." Appealed Order at 14. Whether counsel properly stated the law in closing argument can impact whether an instructional error is harmless. *Rosales v. State,* 23 N.E.3d 8, 16 (Ind. 2015).

[20]     In light of all of the information provided to the jury, we conclude that Lay was not denied fundamental due process. That, however, does not end our inquiry into whether Lay was prejudiced by trial counsel's ineffective assistance. In *Boesch*, upon which we rely for the foregoing standard, the petitioner claimed that an erroneous jury instruction rose to the level of fundamental error. 778 N.E.2d at 1279. The "fundamental error" rule is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). But, we have explained that although the standards for fundamental error and prejudice for ineffective assistance of trial counsel "may frequently lead to the same result, the analyses are different" and present "two substantively different questions." *Benefield,* 945 N.E.2d at 803, 805. Thus, we must consider whether counsel's failure to object to final jury instructions 30 and 31 prejudiced Lay— rather than simply deeming the error insufficient to constitute fundamental error.

[21]     On appeal, Lay relies upon *Roberson v. State*, where we found ineffective assistance of trial counsel, for the proposition that the erroneous jury instruction rendered trial counsel's performance deficient and that he suffered resulting prejudice. 982 N.E.2d 452 (Ind. Ct. App. 2013). In *Roberson*, the petitioner argued:

> the murder and voluntary manslaughter instructions were
> erroneous both because they effectively precluded the jury from

considering whether [the petitioner] committed voluntary manslaughter if the State proved the basic elements of murder, i.e. knowingly killing [the victim], and because they erroneously placed the burden on the State of proving the existence of sudden heat beyond a reasonable doubt.

*Id.* at 455-56. We, as did the post-conviction court, find *Roberson* easily distinguishable.

[22] First, the jury in *Roberson* was twice incorrectly informed by the trial court's jury instructions that sudden heat was an element of voluntary manslaughter and that the State bore the burden of *proving* the existence of sudden heat. *Id.* at 459. Here, the jury was correctly informed that sudden heat was a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter and that the State bore the burden of *disproving* its existence. [Direct Appeal] Appellant's App. at 210. Second, the trial court in *Roberson* instructed the jury, "If the State proves the Defendant guilty of Murder, you *must not* consider the included crimes[,]" 982 N.E.2d at 458, rather than the "need not consider" language present here. [Direct Appeal] Appellant's App. at 209. Although at first glance this appears to make no meaningful difference, the former expressly prohibits the jury from proceeding to consider voluntary manslaughter, having already been incorrectly informed regarding sudden heat and its relation to a murder conviction. Here, because the jury was correctly instructed, we share no such dilemma. And thirdly, in *Roberson*, "neither party explained the proper burden of proof to the jury during their closing arguments." *Roberson,* 982

N.E.2d at 461. Whereas here, as discussed above, the deputy prosecutor "explained that the State had to disprove sudden heat." Appealed Order at 14.

[23] Lay's reliance on *McWhorter v. State*, 970 N.E.2d 770 (Ind. Ct. App. 2012), *trans. granted*, *summarily aff'd in relevant part*, 993 N.E.2d 1141 (Ind. 2013), is likewise misplaced. In *McWhorter*, the defendant claimed that his trial counsel was ineffective for failing to object to the trial court's instruction on voluntary manslaughter, which informed the jury that if the State failed to prove the elements of murder, it must find the defendant not guilty of murder. *Id.* at 777. Immediately after this, however, it stated, "*[y]ou may then consider any included crime*[,]" and set forth the elements of voluntary manslaughter. *Id.* We determined:

> A finding that less than all the elements of Murder were proven is, in these circumstances, necessarily a finding that the requisite intent was not established. We find that the instruction to proceed to consider Voluntary Manslaughter only upon a failure of proof of Murder invites inconsistency and renders the result of the trial unreliable.

*Id.* at 778. We, therefore, held that trial counsel's failure to object to this improper instruction was deficient performance. *Id.* We concluded that McWhorter was prejudiced because he was convicted of voluntary manslaughter, which, according to the jury instructions, could only be proved on a failure to find all the elements of murder, yet a conviction for voluntary manslaughter requires proof of all the elements of murder. *Id.*

Here however, unlike in *McWhorter*, the jury was properly instructed (though in an inartful manner) that if the State failed to prove that Lay knowingly or intentionally killed Mary, it was to find him not guilty of murder, but that if the State did prove that he knowingly or intentionally killed Mary while acting in sudden heat (which the State had the burden to disprove), it should find him guilty of voluntary manslaughter.

Considering the totality of the final jury instructions, and trial counsel's closing argument, we cannot say that Lay showed a reasonable probability that, but for trial counsel's errors, the result of his trial would have been different. *Garrett,* 992 N.E.2d at 719. "Generally, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Matheny v. State,* 983 N.E.2d 672, 681 (Ind. Ct. App. 2013) (quotation omitted), *trans. denied.* We therefore conclude the post-conviction court did not err in finding trial counsel was not ineffective with respect to the jury instructions.

### 2. *Failure to Request Instruction*

Next, Lay claims his trial counsel was ineffective for failing to request that the jury be instructed with regard to the lesser-included offense of voluntary manslaughter for the killing of Kelly Jinks. Lay argues, "It makes no rationale [sic] sense to not request a voluntary manslaughter instruction for Kelly once counsel obtained one for Mary because the [sic] whatever intent the jury ascribed to Mary, it would then transfer to Kelly by the State's own argument." Br. of Petitioner-Appellant at 23. According to Lay, "[b]y not requesting the

voluntary manslaughter instruction for Kelly, if the jury were to conclude Lay knowingly killed Mary but acted in sudden heat, it would convict him of voluntary manslaughter for Mary but then be forced to convict him of murder for Kelly which is not rationale [sic]." *Id.*

[27] While our Supreme Court has previously held that voluntary manslaughter is a lesser included offense to murder, it has also determined that "a tactical decision not to tender a lesser included offense does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense." *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998). Here, Lay's counsel made the decision to withdraw a tendered instruction on involuntary manslaughter for the killing of Kelly and proceed with an instruction on reckless homicide in order "to keep it clean." [Trial] Tr., Vol. II at 303. She also, presumably, made the decision to not tender an instruction on voluntary manslaughter, which, arguably, could have undermined the reckless homicide theory of defense. *See Sarwacinski v. State*, 564 N.E.2d 950, 951 (Ind. Ct. App. 1991) (finding no ineffectiveness where counsel pursued a self-defense strategy and did not tender an instruction on voluntary manslaughter which "would have weakened the self-defense case and diminished appellant's chances of acquittal"). We cannot say that trial counsel's decision not to seek an instruction on voluntary manslaughter warranted post-conviction relief.

[28] Furthermore, the evidence before the post-conviction court was that this decision was strategic. The post-conviction court noted that "the focus of [trial

counsel's] defense regarding Kelly Jinks was recklessness" and then quoted the following portion of trial counsel's closing argument:

> Kelly's a no-brainer.  They did not put on evidence that he knowingly killed Kelly.  Nobody, not one of the three people that were out there can tell you where she was when she got shot.

> You'll be given an instruction on reckless homicide.  You cannot find him guilty, based on the evidence, not guessing and speculation -- and I'll go over what the instructions are.  And you'll hear what reckless homicide is.  Did what he do [sic] was reckless and it caused her death?  If that's what you think happened, find him guilty of reckless homicide.

Appealed Order at 16; [Trial] Tr., Vol. II at 359.  We will not second-guess counsel's strategy "through the distortions of hindsight."  *Autrey*, 700 N.E.2d at 1141.

[29]  Moreover, at the post-conviction hearing, Lay did not ask trial counsel why she did not tender a voluntary manslaughter instruction.  Absent evidence in support of a petitioner's claim of ineffective assistance of counsel, a court can infer that counsel would not corroborate the allegations.  *See Dickson v. State*, 533 N.E.2d 586, 589 (Ind. 1989).

[30]  Lay has failed to establish that a different outcome was reasonably likely if the jury instruction had been given.  Thus, it follows that the post-conviction court properly found that Lay failed to prove that he was denied the effective assistance of trial counsel with respect to failure to request that the jury be instructed on voluntary manslaughter for the killing of Kelly.

### *3. Failure to Call Witness*

[31] Next, Lay claims his trial counsel was ineffective for failing to obtain an expert witness to challenge the testimony of the State's pathologist that the wound to the back of Mary's head was an entrance wound and not an exit wound. Lay argues that his "alternative narratives" of self-defense and sudden heat "were all severely compromised . . . in the face of the pathologist's incorrect but unchallenged testimony[,]" and that there is a reasonable probability that the jury would have reached a different result "[h]ad the jury been able to hear an expert explain why Mary's wound in the back of her head had to have been the exit wound while the wound in front, just above the eyebrow, must have been the entrance wound[.]" Br. of Petitioner-Appellant at 25.

[32] "A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess, although a failure to call a useful witness can constitute deficient performance." *Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998) (citation omitted). Choosing which witnesses to call "is the epitome of a strategic decision." *Wisehart v. State,* 693 N.E.2d 23, 48 n.26 (Ind. 1998), *cert. denied*, 526 U.S. 1040 (1999). And we will not find counsel ineffective for failure to call a particular witness absent a clear showing of prejudice. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 108 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001).

[33] When an ineffective assistance of counsel claim alleges the failure to present witnesses, the petitioner must offer evidence as to who the witnesses were and what their testimony would have been. *Lee v. State*, 694 N.E.2d 719, 722 (Ind.

1998), *cert. denied*, 525 U.S. 1023 (1998). At trial, Dr. Obenson, a forensic pathologist who testified for the State, testified that the wound in the back of Mary's head was the entrance wound. At the post-conviction hearing, Lay presented the testimony of Dr. George Nichols, a forensic pathologist, who testified that certain language in the autopsy report, specifically, "[e]xternal beveling," indicated that the wound in question was an exit wound, not an entrance wound. [Post-Conviction] Transcript, Volume 2 at 41. On cross-examination, however, he explained that, in preparing to testify, he had "reviewed the autopsy report and two color photographs showing only the external injuries that were described in the autopsy report[,]" and that he "gladly would have examined [any additional photographs] to see what the boney wound actually looked like rather than what it was described[.]" *Id.* at 44. He further testified that his opinion regarding the wound path would change if the word "external" in the autopsy report was determined to be a typographical error that should have read "internal." *Id.* at 45.

[34] Trial counsel testified at the post-conviction hearing that Lay had told her that he did not shoot Mary in the back of the head. Counsel further testified that "it would have been helpful" to challenge the location of the entry wound and that her failure to do so was not a strategic decision. *Id.* at 15. However, on cross-examination, she also testified that she "did not have any reason at the time to doubt what [Dr. Obenson] had said" other than the counter-narrative that Lay provided. *Id.* at 18.

The post-conviction court concluded that trial counsel's performance was "reasonable and not deficient[,]" that testimony regarding the wound path did not invalidate Lay's claim of self-defense, that trial counsel's cross-examination of Dr. Obenson "downplayed the significance of his description of the wound path," and that Lay failed to show "a reasonable probability of a more favorable outcome at trial had counsel presented an independent pathologist to testify." Appealed Order at 16-18. Our review of the record does not lead us to an opposite conclusion. *See Badelle v. State*, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), *trans. denied*. The post-conviction court did not err in denying Lay's claim of ineffective assistance of trial counsel for failure to call an expert witness.

## C. Appellate Counsel

Finally, Lay alleges that he was denied effective assistance of appellate counsel because counsel failed to argue that final jury instructions 30 and 31 were fundamental error on direct appeal. Because of our resolution of Lay's claims involving trial counsel, however, we easily dispense with this claim and conclude that Lay has failed to demonstrate prejudice.

In *Benefield*, we explained:

As with trial counsel, to establish that appellate counsel rendered ineffective assistance, a petitioner must show appellate counsel was deficient in performance and that the deficiency resulted in prejudice. *Ritchie v. State*, 875 N.E.2d 706, 723 (Ind. 2007). However, appellate and trial counsel have different tasks, which result in different kinds of deficient performance and prejudice. Thus, when the alleged error is that appellate counsel failed to raise issues, prejudice is based on "whether the issues appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial." *Id.* at 724. Accordingly, there is no prejudice created by appellate counsel's failure to raise an unpreserved issue that does not result in fundamental error because the issue would *not* have been clearly more likely to result in reversal or an order for a new trial. Put another way, if an unpreserved error is found not to be fundamental, then appellate counsel cannot be ineffective for failing to raise it.

945 N.E.2d at 802-03.

[38] Above, in the context of Lay's claim of ineffective assistance of trial counsel for failing to object to final jury instructions 30 and 31, we concluded that Lay failed to establish prejudice. As we held in *Benefield*,

the bar establishing fundamental error is higher than that for prejudice of ineffective assistance of trial counsel. Therefore, where an appellant has failed to prove ineffective assistance of trial counsel, our holding would exclude a finding of fundamental error.

*Id.* at 805. Accordingly, because Lay failed to prove ineffective assistance of trial counsel with respect to final jury instructions 30 and 31, he has failed to show fundamental error, and in turn, has failed to demonstrate prejudice

resulting from appellate counsel's alleged deficient performance in failing to raise the issue.

# Conclusion

[39] Lay failed to demonstrate both ineffective assistance of trial and appellate counsel. Therefore, we conclude that the post-conviction court did not err when it denied Lay's petition for post-conviction relief.

[40] Affirmed.

Riley, J., and Kirsch, J., concur.