## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 22 2021, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert D. Littlejohn,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 22, 2021<br><br>Court of Appeals Case No.<br>20A-CR-1066<br><br>Appeal from the<br>Allen Superior Court<br><br>The Honorable<br>David M. Zent, Judge<br><br>Trial Court Cause No.<br>02D06-1909-MR-10 |

**Kirsch, Judge.**

Following a jury trial, Robert D. Littlejohn ("Littlejohn") was convicted of murder,[1] a felony, and sentenced to sixty years executed. Littlejohn appeals his conviction and sentence for murder and raises the following issues for our review:

> I. Whether the trial court erred when it denied Littlejohn's request to instruct the jury on the lesser included offense of voluntary manslaughter;
>
> II. Whether the trial court abused its discretion in sentencing Littlejohn when it declined to find his proposed mitigating factors; and
>
> III. Whether Littlejohn's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

On September 7, 2019, Keonna Suttle ("Keonna") returned home to 1610 Roosevelt Street ("1610 Roosevelt") in Fort Wayne, Indiana after delivering tamales with her mother, Alisha Suttle ("Alisha"); her aunt, Siara Jackson ("Siara"); and a family friend, Kennedy Laramore ("Kennedy"). *Tr. Vol. 2* at 154. Keonna lived at 1610 Roosevelt with her grandmother, Diana Littlejohn ("Diana") and step-grandfather, Littlejohn. *Id.* When Keonna, Alisha, Siara,

---

[1] *See* Ind. Code § 35-42-1-1.

and Kennedy arrived at 1610 Roosevelt, Littlejohn's sister, Cynthia Littlejohn ("Cynthia") was also there. *Id.* at 158. Cynthia and Littlejohn had returned from visiting family members following the recent death of their father. *Tr. Vol. 3* at 71. Cynthia was outside as Keonna left the vehicle, which was parked on the street near 1610 Roosevelt, and Cynthia followed Keonna into the residence, angrily confronting Keonna and telling her to stay out of "grown folks business." *Tr. Vol. 2* at 158-60.

[4] Littlejohn, who was inside the house, told Cynthia to leave. *Id.* at 161. Alisha was also inside the house and Siara and Kennedy remained outside in the vehicle. *Id.* As to Keonna staying out of "grown folks business" *id.* at 160, Alisha told Cynthia that if Cynthia had "anything to say to [Keonna]" that she could say it to her or to Diana but that Cynthia "got mad, she got smart, snarky" and Cynthia and Alisha began to argue. *Id.* at 160. Alisha left the house and went back to the vehicle. *Id.* at 161-62. Keonna was still in the house and as Cynthia was leaving through the front door, she hit Keonna, who was pregnant, in the jaw which caused a fight that continued outside the house. *Id.* at 162-63, 199. At that point, Alisha, Siara, and Kennedy left the vehicle and came up to the fight between Keonna and Cynthia, which was still occurring outside the home. *Id.* at 163-64. Cynthia and Siara also began to fight after Cynthia tried to hit Siara in the face, and Alisha and Kennedy also joined the fight; Diana called for everyone to stop fighting, but the fight moved to the driveway and into the yard near Cynthia's car. *Id.* at 164-66. Littlejohn

attempted to stop the fight and get Cynthia to leave with him in her vehicle. *Id.* at 164.

[5] The events continued to escalate, and Littlejohn began shoving and knocking people around, at some point, striking Diana in the back of her head. *Id.* at 169-71, 200; *State's Ex. 3.* The fighting continued, and Littlejohn went to the garage area and returned to the fight, which was in the area near Cynthia's car, with a knife in his hand. *Tr. Vol. 2* at 165. Once Littlejohn grabbed the knife and returned to the fight, he came toward Keonna and swung the knife at her stomach saying, "[y]ou and this baby gonna die" but did not make contact with Keonna. *Id.* at 174-75. In defense of Keonna, Kennedy then came up and hit Littlejohn while she was unarmed. *Id.* at 166, 174-75. Both Keonna and Siara testified that Kennedy was unarmed, and they did not see her with a knife that night. *Id.* at 166, 226-27.[2] After Kennedy hit Littlejohn, he began to chase her and eventually slashed Kennedy's arms with the knife and fatally stabbed her in the back. *Id.* at 174-75; *Tr. Vol. 3* at 6-7, 10; *State's Exs. 3, 5, 6, 9.* Immediately after Littlejohn fatally stabbed Kennedy, Littlejohn and Cynthia got into Cynthia's car and drove away. *Tr. Vol. 2* at 227; *Tr. Vol. 3* at 76; *State's Ex. 3.*

[6] Keonna called 911 during the fight, and Fort Wayne Police Department officers arrived at a chaotic scene shortly after the fight had ended. *Tr. Vol. 2* at 183-84,

---

[2] In a telephone call made from jail, Littlejohn later told Diana that Kennedy had a knife. *Tr. Vol. 2* at 219-20. At first, Diana did not state to police that Kennedy grabbed a knife, but later, at a meeting with prosecutors on February 14, 2020, she later claimed Kennedy had a knife. *Id.* at 208-11; *Tr. Vol. 3* at 15, 44.

233-34, *Tr. Vol. 3* at 40; *State's Ex. 4*. Police found two knives in the area, but they lacked usable DNA or fingerprints. *Tr. Vol. 3* at 118-19, 132-34. Sergeant Shannon Hughes ("Sergeant Hughes") pulled Cynthia's gold Chrysler Pacifica over a short time later and found Littlejohn in the driver's seat and Cynthia in the passenger seat. *Id.* at 21-23. Sergeant Hughes arrested Littlejohn and described him as "very angry, very hostile, excited." *Id.* at 23.[3] Littlejohn also made statements to Detective Geoff Norton like "I cut them up because they came at my sister." *Id.* at 31-32, 35; *State's Ex. 14*. Detective Jason Palm, who took swabs from Littlejohn, said Littlejohn's demeanor alternated between "hostile and cooperative" but that he ultimately "had no issues doing what [he] needed to do." *Tr. Vol. 3* at 52.

[7]     Dr. Scott Wagner, a forensic pathologist, explained that Kennedy had wounds on her arms caused by a sharp object that were defensive wounds. *Tr. Vol. 2* at 244; *Tr. Vol. 3* at 6-7; *State's Exs. 5, 6*. Kennedy also received a stab wound that went five inches into her back between two of her ribs, which cut her left lung, aorta, and heart causing 600 milliliters of blood to pool in her left chest. *Tr. Vol. 2* at 249, *Tr. Vol. 3* at 4. Her cause of death was determined to be a stab wound to the chest. *Tr. Vol. 3* at 10. Littlejohn also exhibited minor wounds to his chest and back. *Id.* at 54-55; *State's Exs. 17, 18*.

---

[3] Sergeant Hughes also stated that Littlejohn was "a very large man. He's about six nine (6'9") almost two hundred fifty plus (250) pounds," and she had to call for a larger police vehicle to accommodate Littlejohn. *Tr. Vol. 3* at 23.

[8] On September 12, 2019, the State charged Littlejohn with murder. *Appellant's App. Vol. 2* at 12. On March 3, 2020, the trial court held a three-day jury trial. *Id.* at 6-7, 46-47. At trial, Littlejohn tendered proposed jury instructions regarding voluntary manslaughter and sudden heat. *Id.* at 48-52. The trial court rejected Littlejohn's proposed voluntary manslaughter and sudden heat instructions after listening to the arguments of Littlejohn's counsel and the prosecutor as to whether there was a serious evidentiary dispute. *Tr. Vol. 3* at 157-60. The jury found Littlejohn guilty as charged of murder. *Id.* at 191; *Appellant's App. Vol. 2* at 70.

[9] The trial court held the sentencing hearing on April 24, 2020. *Appellant's App. Vol. 2* at 119. Littlejohn's counsel sought the statutory minimum sentence of forty-five years for Littlejohn. *Tr. Vol. 3* at 200. Littlejohn's counsel had also previously filed a sentencing memorandum, which provided additional background on Littlejohn's life, addressed the statutory mitigating factors found in Indiana Code section 35-38-1-7.1(b) and included letters of support for Littlejohn. *Appellant's Conf. App. Vol. 2* at 106-15; *Tr. Vol. 3* at 200. Specifically, trial counsel contended that the following were mitigating circumstances: (1) that the circumstances of the offense were unlikely to reoccur because the incident was chaotic and involved multiple individuals; (2) Littlejohn was acting under provocation because there were three individuals who did not have any contractual interest in 1610 Roosevelt on the night of the offense; (3) Littlejohn had not been previously convicted of a crime of violence and had led a law-abiding for twenty years before this conviction; (4) Littlejohn would be

likely to respond affirmatively to probation or a shorter term of imprisonment; and (5) his character and attitudes indicated he would be unlikely to commit another crime. *Appellant's Conf. App. Vol. 2* at 112-13. The trial court also considered Littlejohn's presentence investigation report ("PSI"). *Appellant's Conf. App. Vol. 2* at 91-105. Littlejohn also expressed his remorse over taking a life, which the trial court found as a mitigator but assigned it little weight. *Tr. Vol. 3* at 208-11. The trial court identified four aggravating factors: (1) Littlejohn's criminal history; (2) prior attempts at rehabilitation had failed; (3) Littlejohn's offense demonstrated an escalation of criminal conduct; and (4) the nature and circumstances of the offense. *Id.* at 211-12; *Appellant's App. Vol. 2* at 127. The trial court rejected Littlejohn's proposed mitigators. *Tr. Vol. 3* at 210-12. The trial court sentenced Littlejohn to sixty years executed in the Indiana Department of Correction. *Id.* at 212; *Appellant's App. Vol. 2* at 119. Littlejohn now appeals.

## Discussion and Decision

## I. Jury Instruction

[10] Littlejohn argues that it was error for the trial court to refuse his tendered instruction on the lesser included offense of voluntary manslaughter.[4] Trial

---

[4] Citing *Brown v. State*, 703 N.E.2d 1010 (Ind. 1998), Littlejohn contends that our review should be *de novo*. *See Appellant's Br.* at 15-17. In *Brown*, the Indiana Supreme Court explained that if a "trial court rejects a tendered instruction on the basis of its view of the law, as opposed to its finding that there is no serious evidentiary dispute," then we will review that decision *de novo*. 703 N.E.2d at 1019. But when a trial court makes an express finding "as to the existence or absence of a substantial evidentiary dispute," then we review its decision for an abuse of discretion. *Id.* After hearing argument from both Littlejohn's counsel and the

courts are provided broad discretion when instructing juries, and we review a trial court's decision with regard to jury instructions only for an abuse of that discretion. *Harrison v. State*, 32 N.E.3d 240, 251 (Ind. Ct. App. 2015), *trans. denied*. When determining whether to give a lesser included offense instruction, trial courts apply the three-part test our supreme court set out in *Wright v. State*, 658 N.E.2d 563 (Ind. 1995). In *Wilson v. State*, the Indiana Supreme Court explained that:

> The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense. If so, the trial court must determine whether there is a serious evidentiary dispute regarding any element that distinguishes the two offenses.

765 N.E.2d 1265, 1271 (Ind. 2002) (citations omitted). If the evidence in the record does not support giving an instruction on an inherently or factually included lesser offense, then the trial court should not give it to the jury. *Wright*, 658 N.E.2d at 567.

[11] Murder and voluntary manslaughter are distinguished by evidence of sudden heat, "which is an evidentiary predicate that allows mitigation of a murder

prosecutor relating to evidence of sudden heat, the trial court rejected Littlejohn's tendered instructions. *Tr. Vol. 3* at 157-60. While the trial court did not explicitly state that it found no serious evidentiary dispute, the record indicates that the lack of a serious evidentiary dispute was the basis for its decision. *Id.* Therefore, we will apply an abuse of discretion standard of review. *See Brown*, 703 N.E.2d at 1019 (where the trial court does not make an explicit finding as to whether a serious evidentiary dispute existed, "we will presume that the trial court followed controlling precedent and applied" the law). We also note that, even if we were to review the trial court's decision *de novo*, we would still conclude that the trial court did not err when it declined to give Littlejohn's tendered instructions to the jury.

charge to voluntary manslaughter." *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004); *see also* Ind. Code § 35-42-1-3. Sudden heat is described as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation[.]" *Washington*, 808 N.E.2d at 626. An instruction on voluntary manslaughter is appropriate only "if there exists evidence of sufficient provocation to induce passion that renders a reasonable personal incapable of cool reflection." *Id.* Words alone do not constitute sufficient provocation. *Gibson v. State*, 43 N.E.3d 231, 240 (Ind. 2015).

[12] Because voluntary manslaughter is an inherently included offense of murder, step one of the *Wright* test is satisfied, and we turn to step three, whether there is a serious evidentiary dispute as to sudden heat. *Wright*, 658 N.E.2d at 567. Any appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter. *Roark v. State,* 573 N.E.2d 881, 882 (Ind. 1991).

[13] Littlejohn acknowledges that "provocative words alone cannot sustain a request for the lesser-included instruction of voluntary manslaughter" but contends that "violent behavior, chaotic situations, and aggressive actions, particularly in quick succession over a short period of time, are enough" to show a serious evidentiary dispute as to sudden heat such that the jury should have been instructed on the lesser-included offense. *Appellant's Br.* at 20. Littlejohn contends that when he was attacked by Kennedy he reacted with an "uncontrollable rage" to the chaotic events of that night. *Id.* at 22. He also contends that his case is analogous to *Brantley v. State*, 91 N.E.3d 566 (Ind.

2018), *cert. denied*, 139 S. Ct. 839 (2019) and *Roberson v. State*, 982 N.E.2d 452 (Ind. Ct. App. 2013) in which there was evidence of sudden heat.

In *Brantley*, the Indiana Supreme Court addressed "the unusual and rare circumstance where a defendant is charged with voluntary manslaughter without also being charged with murder." 91 N.E.3d at 568. The issue of instructing the jury on a lesser included offense was not at issue. Also, the Indiana Supreme Court determined there was sufficient, "although scant," evidence of sudden heat in Brantley's case because he lived in a house where domestic violence was common, and the victim angrily arose from his chair with a shiny object in his hand, possibly a knife, just before Brantley shot him. *Id.* at 572.

In *Roberson*, which was a post-conviction relief case, this court found ineffective assistance of counsel for failure to point out instructional errors, including instructions addressing murder and voluntary manslaughter, and observed that the record contained "ample evidence of possible sudden heat." 982 N.E.2d at 457, 460-61. In discussing the evidence of sudden heat, this court observed that the fatal shooting occurred "immediately after [the victim's] punch, meaning there was little or no time for calm reflection by Roberson between [the victim's] ultimate act of provocation and the shooting. [The victim's] provocation went beyond mere words to physical violence, although [the victim's] words and other conduct throughout the evening may have contributed to the provocation" and that the evidence of sudden heat required a

proper jury instruction for the State's burden of proof on murder and voluntary manslaughter. 982 N.E.2d at 457-58.

[16] We disagree with Littlejohn that there was a serious evidentiary dispute as to the existence of sudden heat. Here, the evidence presented at trial showed that, after attempting to get Cynthia to leave the fight, the events escalated and culminated in Littlejohn attacking Kennedy with a knife, which caused her death. *Tr. Vol. 2* at 161, 164-66, 174-75; *Tr. Vol. 3* at 10; *State's Ex. 3*. Littlejohn initially attempted to remove Cynthia from the situation and leave the scene while the women were fighting, but instead of continuing on this path, he shoved people and then grabbed a knife from the garage area. *Tr. Vol. 2* at 164-65, 169-71, 200; *State's Ex. 3*.

[17] Voluntary manslaughter involves an "impetus to kill" which "suddenly overwhelms" the actor. *Stevens v. State*, 691 N.E.2d 412, 427 (Ind. 1997). Unlike in *Brantley*[5] and *Roberson* where there was evidence of sudden heat, Littlejohn's decision to get a knife and enter the fray after his attempt to get Cynthia to leave the fight and proceeding to attack Keonna and fatally stab Kennedy, does not show that he was overwhelmed with a sudden "impetus to

---

[5] As discussed above, in *Brantley*, the issue of whether the jury should have been instructed on a lesser included offense was not at issue. After finding "scant" evidence of sudden heat, the Indiana Supreme Court explained the relationship between an instruction on self-defense and the evidentiary basis for sudden heat, stating that "terror sufficient to establish the fear of death or great bodily harm necessary for self-defense could be equally sufficient to invoke sudden heat" and that "the same evidence can either mitigate murder or excuse it altogether." *Brantley*, 91 N.E.3d at 572, 573-74. We cannot say that application of *Brantley* required the trial court to instruct the jury on sudden heat.

kill" or that he lacked the reason of an ordinary person, rendering him incapable of cool reflection. *See Stevens*, 691 N.E.2d at 427. Moreover, after Littlejohn grabbed the knife and before the fatal stabbing, Littlejohn first swung the knife toward Keonna's stomach saying "[y]ou and this baby gonna die." *Tr. Vol. 2* at 174-75. In defense of Keonna, Kennedy hit Littlejohn while she was unarmed, and Littlejohn proceeded to attack Kennedy with the knife, inflicting defensive wounds on her and fatally stabbing her in the back as she ran away.[6] *Id.* at 166, 174-75; *Tr. Vol. 3* at 7, 10; *State's Exs. 3, 5, 6*. Littlejohn also had the presence of mind after fatally stabbing Kennedy to drive away from the scene. *Tr. Vol. 2* at 227; *Tr. Vol. 3* at 76; *State's Ex. 3*. While there was testimony that Littlejohn was angry and the events of that night were chaotic, there was no evidence presented to show that Littlejohn's mental state was so obscured by his anger that he was prevented from exercising his rational faculties. *See Wilson v. State*, 697 N.E.2d 466, 474 (Ind. 1998) (standing alone, anger is not sufficient to support an instruction on sudden heat); *Washington*, 808 N.E.2d at 626 (holding that an instruction on voluntary manslaughter was not warranted where the evidence showed a degree of deliberation and cool reflection); *Suprenant v. State*, 925 N.E.2d 1280, 1284 (Ind. Ct. App. 2010) (observing that the record was replete with evidence "that the impetus to kill did not 'suddenly' arise in response to a contemporaneous event," that the couple had been

---

[6] As noted, Littlejohn also exhibited defensive wounds on his chest and back, and two knives were found in the area. *State's Ex. 17, 18*. The jury was instructed on self-defense and rejected that defense, finding that the State met its evidentiary burden to disprove that Littlejohn did not act out of terror or sudden fear of harm. *Appellant's App. Vol. 2* at 57.

arguing at length, and that, earlier on the day of the victim's death, the defendant had told his mother that the victim planned to leave and take the children, and holding that the defendant was not entitled to a voluntary manslaughter instruction), *trans. denied*. We cannot say that there was a serious evidentiary dispute as to whether Littlejohn acted out of sudden heat when he fatally stabbed Kennedy. Therefore, the trial court did not abuse its discretion when it declined to instruct the jury on voluntary manslaughter.

## II.    Abuse of Discretion in Sentencing

[18]    Littlejohn next argues that the trial court abused its discretion by failing to find his proposed mitigating factors. Sentencing decisions are within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs in four ways, where the trial court: 1) fails to enter a sentencing statement; 2) cites an aggravating or mitigating factor that is not supported by the record; 3) fails to cite factors that are clearly supported by the record; and 4) relies on reasons that are improper as a matter of law. *Id.* at 490-41.

[19]    Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the trial court's discretion. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). "A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance." *Id.* (internal quotations omitted).

The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001) (citing *Birdsong v. State*, 685 N.E.2d 42, 47 (Ind. 1997)). Furthermore, while Indiana law mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating factors that are clearly supported by the record may imply that the trial court failed to properly consider them, *id.*, an allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

[20] Littlejohn first contends that in mitigation the record clearly supported that the circumstances leading to the offense were unlikely to recur because it was a chaotic situation in which Littlejohn was under strong provocation. He also argues that in mitigation the record clearly supported that he had a twenty-year period in which he did not engage in criminal activity and none of his prior criminal offenses were crimes of violence; that he had successfully completed all programming that had been previously ordered; and that he had community support by way of letters of support and family attendance at his sentencing. We disagree with Littlejohn that the trial court failed to consider or mention his proposed mitigating factors in sentencing him.

[21] At sentencing, members of Littlejohn's family appeared in support of him, and the trial court considered Littlejohn's sentencing memorandum, which included letters of support from members of Littlejohn's family. *Tr. Vol. 3* at 200;

*Appellant's Conf. App. Vol. 2* at 114-15. Kennedy's father also testified as to the impact of her death on the family, and a letter prepared by Kennedy's mother was read at sentencing describing the pain Kennedy's death caused the family. *Tr. Vol. 3* at 201-04. The trial court stated that it was considering the views of the families of both Littlejohn and Kennedy. *Id.* at 210-11. It observed that Littlejohn's actions would leave "[a] huge impact" on Kennedy's family, and, likewise, Littlejohn's family was "looking at a family member going away for a considerable period of time." *Id.* at 211. Rather than finding that the family and community testimony favored the views of either family, the trial court stated "unfortunately I probably can't grant either one of their requests" as to the length of Littlejohn's sentence because it did not believe Littlejohn was eligible for "a minimum sentence as requested by one side, and also based on his - the aggravators and mitigators I don't think I can also give him a maximum sentence either." *Id.* With respect to aggravators and mitigators in Littlejohn's case, the trial court stated as follows:

> As far as mitigators, uh, and remorse, I - I - I do agree with [the prosecutor]. I think it's more of a regret, however, I do sense some remorse in the - the statement you just made, sir. But I - I do give that just a little bit of weight. Going through the Sentencing Memorandum, . . . . I will note that one of them as, uh, referenced individuals coming to your house with no contractual interest. If memory serves, those were family and friends of the family that were there that it wouldn't be uncommon for them to be there. In [regard] to prior criminal history, uh, it's - it's - it wasn't the driving while [suspended] that you had some time ago. And I agree they were old, but they were major felonies. They were B felonies. And going from B felonies to murder obviously also shows a possible aggravator of

an escalation. Um, the short term of imprisonment is also requested, or probation. As I already stated, I can't do that. The minimum sentence is forty-five (45) years. As far as someone unlikely to commit another crime, I don't necessarily agree with that as you have a previous criminal record. Once again, it is old, but they are serious crimes. As aggravators, you do have the criminal record of serious felonies as B felonies and also an escalation up to murder. Prior attempts at rehabilitation have failed. Once again, I'm not gonna rehash everything that was stated, but there were opportunities for you and then there were subsequent or later crimes. I guess - and also I take as an aggravator the nature and circumstances of the crime, cause I mean essentially the bottom line, sir, is that you chased this individual down while they were running away from you and you stabbed her in the back killing her. Uh, I find the aggravators outweigh the mitigators. I show you're committed to the Indiana Department of Corrections for classification and confinement for a period of sixty (60) years.

*Id.* at 211-12.

[22] The trial court's statement at sentencing belies Littlejohn's contentions that it did not consider his proposed mitigating factors. To the contrary, the trial court considered the impact of Littlejohn's actions on both families, reviewed Littlejohn's PSI, considered the arguments of Littlejohn's counsel and Littlejohn's own statement on his behalf, and reviewed his sentencing memorandum, in which Littlejohn argued for the same proposed mitigating factors he now does on appeal. *Id.* at 200, 208-10; *Appellant's Conf. App. Vol. 2* at 91-105, 106-15. Outside of his remorse, to which the trial court assigned "a little bit of weight" in mitigation, *tr. vol. 3* at 212, the trial court considered Littlejohn's proposed mitigating factors and declined to find them as such. *See*

*Mehringer v. State*, 152 N.E.3d 667, 673 (Ind. Ct. App. 2020) (noting that a trial court does not have to "accept the defendant's arguments regarding what constitutes a mitigating factor or assign proposed mitigating factors the same weight as the defendant."), *trans. denied.* We cannot say that the trial court abused its discretion by failing to adopt Littlejohn's proposed mitigating factors.

## III. Inappropriate Sentence

[23] Littlejohn also argues that his sentence is inappropriate in light of the nature of the offense and his character. Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Whether a sentence is inappropriate turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). We defer to the trial court's decision, and our goal is to determine whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). When we review a sentence, we seek to leaven the outliers, not to achieve a perceived correct result. *Cardwell*, 895

N.E.2d at 1225. On appeal, it is the defendant's burden to persuade us that the sentence imposed by the trial court is inappropriate. *Shell v. State*, 927 N.E.2d 413, 422 (Ind. Ct. App. 2010).

[24] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). The advisory sentence for murder is fifty-five years with a sentencing range of between forty-five years and sixty-five years. Ind. Code § 35-50-2-3. The trial court sentenced Littlejohn to sixty years, which was above the advisory sentence but was not the maximum sentence that he could have received. *Tr. Vol. 3* at 212; *Appellant's App. Vol. 2* at 127. Thus, Littlejohn received an aggravated sentence.

[25] As to the nature of offense, Littlejohn argues that, while any murder conviction presents a danger to the community, the nature of Littlejohn's offense was no greater than the elements required for conviction which, he maintains, shows that his sentence is inappropriate in light of the nature of the offense. The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). When determining whether a sentence that exceeds the advisory sentence is inappropriate, "we consider whether there is anything more or less egregious about the offense as committed by the defendant that 'makes it different from the typical offense accounted for by the legislature when it set the advisory sentence.'" *Moyer v. State*, 83 N.E.3d 136,

142 (Ind. Ct. App. 2017) (quoting *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011)), *trans. denied*.

[26] The nature of Littlejohn's offense shows that, after initially attempting to remove Cynthia from the fighting, Littlejohn grabbed a knife and began to attack Keonna, who was pregnant at the time, swinging the knife toward her stomach. *Tr. Vol. 2* at 161-62, 164-66, 174-75; *State's Ex. 3*. While Kennedy hit Littlejohn in her defense of Keonna, Littlejohn responded by slashing at Kennedy's arms and fatally stabbing her in the back as she was running away. *Tr. Vol. 2* at 166, 174-75; *Tr. Vol. 3* at 7, 10; *State's Exs. 3, 5, 6, 9, 17, 18*. Thus, Littlejohn's offense was sufficiently egregious to justify a deviation from the "typical" offense of murder. *See Moyer*, 83 N.E.3d at 142. We cannot say that Littlejohn's sentence is inappropriate in light of the nature of the offense.

[27] As to his character, Littlejohn argues that his twenty-year period without criminal activity and absence of any history of committing crimes of violence, support from his community, and remorse  show that his sentence is inappropriate in light of his character. "The character of the offender is shown by the offender's life and conduct." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013).

[28] Here, Littlejohn has a nearly twenty-year gap between his last criminal conviction and the current offense, and we acknowledge that Littlejohn has

lived a law-abiding life for a substantial period of time. Littlejohn's prior convictions for burglary in 1990 and dealing in cocaine in 1999 were both Class B felony offenses, and the instant offense shows an escalation in the severity of the crime committed. *Appellant's Conf. App. Vol. 2* at 94-95; *Tr. Vol. 3* at 212. Indeed, while Littlejohn had not been previously convicted of a violent offense and had previously completed rehabilitative programming following each of his prior convictions, during the events on the night of September 7, 2019, he grabbed a knife during a fistfight, slashed Kennedy with the knife, and eventually stabbed her in the back as she was running away. *Appellant's Conf. App. Vol. 2* at 94-95; *Tr. Vol. 2* at 166, 174-75; *Tr. Vol. 3* at 6-7, 10; *State's Exs. 3, 5, 6, 9*. His role in Kennedy's murder shows that his prior completion of rehabilitative programming did not prevent him from engaging in criminal conduct on the night of Kennedy's murder. Littlejohn contends that he is not the "worst of the worst offenders" despite the aggravating circumstances identified by the trial court. *Appellant's Br.* at 28. We acknowledge that Littlejohn received letters of support and, based on the information in his sentencing memorandum and the accompanying letters of support that he submitted at sentencing, appears to be well-regarded by his family and those who know him. *Appellant's Conf. App. Vol. 2* at 106-15. The trial court considered this information, and while it reflects favorably on Littlejohn's character, we cannot say that, in broadly considering Littlejohn's life and conduct, he has carried his burden to show that his sentence is inappropriate in light of his character. *See Conley*, 972 N.E.2d at 876 ("[O]ur goal is to determine whether the appellant's sentence is inappropriate, not whether some

other sentence would be more appropriate.") Littlejohn's sentence is not inappropriate in light of the nature of his offense and his character.

[29] Affirmed.

Bradford, C.J., and May, J., concur.